QUALITY SAND AND GRAVEL, INC. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF TORRINGTON
(AC 18685)

O'Connell, C. J., and Foti and Lavery, Js.

534

Argued May 25—officially released November 2, 1999

*Albert G. Vasko,* corporation counsel, for the appellant (defendant).

*Vincent F. Sabatini,* with whom was *Tara K. Lyons,* for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendant planning and zoning commission of the city of Torrington (commission) appeals from the judgment of the trial court sustaining the plaintiff's appeal from the commission's denial of a special exception application. On appeal before us, the commission claims that the court improperly (1) determined that the plaintiff's use, which was permitted by special exception, was conclusively presumed to be compatible and valid, (2) relied on the commission's master plan because the plan is merely advisory in nature and (3) substituted its judgment for that of the commission in

interpreting the commission's zoning regulations. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On April 1, 1997, the plaintiff, Quality Sand and Gravel, Inc., doing business as B & B Group, applied to the commission for a special exception to perform earth and rock excavation pursuant to § 6.4 of the Torrington zoning regulations for real property at 260 Burr Mountain Road (Burr Mountain property). The plaintiff had an option to buy the Burr Mountain property, which is contiguous to its quarry operation. The owners of the Burr Mountain property authorized the plaintiff to obtain a special exception.

The Burr Mountain property is in an outlying residence zone (R-60) surrounded by the following properties: to the north, O & G Industries' quarry (R-60 zone); to the east, the plaintiff's quarry; to the south, the old Torrington drive-in movie theater and two nonconforming residences (industrial zone); and to the west, a residence owned and occupied by individuals who previously subdivided their real property to sell land to O & G Industries for its quarry and access road.

On May 7, 1997, Bruce Hoben, staff planning consultant to the commission, submitted a memorandum and map in which he recommended certain alterations to the plaintiff's proposal. The commission published notice and held a public hearing on the plaintiff's special exception application on May 14, 1997, which was continued on May 28, 1997, and closed on June 10, 1997. In response to Hoben's May 7, 1997 report, the plaintiff submitted a revised proposal at the May 14 meeting, which incorporated all of Hoben's recommendations, including a 400 foot buffer zone along Burr Mountain Road. The commission heard evidence and accepted correspondence from individuals for and against the application.

The commission met in executive session on June 25, 1997, and received a second report from Hoben. At its July 23, 1997 meeting, the commission denied the special exception application and cited reasons for doing so on the record. The motion to deny the special exception application stated that it was made on the basis of "the unacceptable intrusion into a viable residential zone. Expansion into a residential zone is not a right of the applicant; protecting the residential zone is the responsibility of this commission. Although the master plan suggests the need for industrial property, it does not . . . imply that a viable neighborhood [may] be encroached upon to reach that need." The plaintiff appealed to the trial court on August 8, 1997, from the commission's decision.

The court sustained the plaintiff's appeal, concluding that the proposed use of the Burr Mountain property should be presumed conclusively to be valid and that the commission improperly inquired into the effect the proposed use would have on property values or the harmony of the district. We granted the commission's application for certification to appeal. After reviewing the briefs and hearing oral argument, the two pertinent issues we decide are (1) whether the court applied the proper standard of review and (2) whether, under the proper standard, there was substantial evidence in the record to uphold the commission's decision.

I

The first issue to be determined is the standard of review the trial court should apply to an appeal from a planning and zoning commission's decision concerning an application for a special exception to zoning regulations. Here, the court improperly applied the presumption of compatibility of uses standard to its review of the plaintiff's appeal.[1]

---

[1] The cases cited by the court on "the presumption of compatibility of uses standard" concern site plans and not special exceptions. See *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 608 A.2d 1178 (1992);

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. *A. P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974). It has no discretion to deny the special exception if the regulations and statutes are satisfied. *Westport* v. *Norwalk,* 167 Conn. 151, 155, 355 A.2d 25 (1974). When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* 13 Conn. App. 159, 163–64, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it. *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 50, 484 A.2d 483 (1984). In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . . In reviewing the action of the trial court, we have to decide whether it could in logic and in law reach the conclusion that the [defendant] should be overruled. *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 428, 133 A.2d 612 (1957)." (Internal quotation marks omitted.) *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* 17 Conn. App. 53, 56–57, 549 A.2d 1076 (1988).

The "general considerations such as public health, safety and welfare, which are enumerated in zoning

*TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 577 A.2d 288 (1990).

regulations, may be the basis for the denial of a special permit." *Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 627, 711 A.2d 675 (1998); *Whisper Wind Development Corp.* v. *Planning & Zoning Commission,* 229 Conn. 176, 177, 640 A.2d 100 (1994). "[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission,* 222 Conn. 607, 613, 610 A.2d 1205 (1992). "Connecticut courts have *never* held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Emphasis in original; internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission,* supra, 627.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 117, 186 A.2d 377 [1962]; *Stern* v. *Board of Zoning Appeals,* 140 Conn. 241, 244, 99 A.2d 130 [1953]. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Connecticut Sand & Stone Corporation* v. *Zoning*

*Board of Appeals*, 150 Conn. 439, 442, 190 A.2d 594 [1963]. *Schwartz* v. *Planning & Zoning Commission*, 208 Conn. 146, 152, 543 A.2d 1339 (1988). . . . *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 72, 588 A.2d 624 (1991)." (Internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 627–28.

"If, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. See *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 218 Conn. 72. In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. *Zieky* v. *Town Plan & Zoning Commission*, 151 Conn. 265, 267–68, 196 A.2d 758 (1963). [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 401, 610 A.2d 620 (1992). If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, supra, 32 Conn. App. 523. The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–40, 525 A.2d 940 (1987)." (Internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 628–29.

"The evidence, however, to support any such reason must be substantial . . . ." *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 203 Conn. 540. "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Internal quotation marks omitted.) Id., 541.

## II

The second part of our analysis concerns whether the plaintiff's appeal should be sustained when the substantial evidence rule is applied to the facts of this case. On the basis of our review of the record, we conclude that there is not substantial evidence to support the commission's denial of the plaintiff's application. We hold that the plaintiff's appeal was properly sustained and therefore affirm the judgment of the trial court.[2]

[2] "We can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

The following additional facts are necessary for our analysis. The plaintiff sought a special exception under § 6.4 (excavations) of the Torrington zoning regulations for the Burr Mountain property. The general standards applicable to special exception applications are contained in § 8.2 of the regulations.[3] The intent of the plaintiff's application was to expand its mining operation adjacent to the Burr Mountain property. A special exception, with certain conditions, previously was granted to the plaintiff's mining operation, and a special exception, with conditions, was granted to O & G Industries on September 11, 1996.

In 1989, Torrington adopted a plan of development, which provides in relevant part: "Industrial Development, Background: Industry has been the dominant economic force in Torrington since the mid-1800s. Despite declines, manufacturing is still the city's largest employer. To ensure that industry is able to expand, it is necessary to set aside sufficient land for future industrial growth. . . . In 1987, an evaluation was done of twenty-five potential industrial sites in the city. Of the five sites rated highest, two are now slated for retail development. Many of the sites have severe restrictions because of the [steep] slopes, significant wetlands, lack of utilities, etc. . . . Goal: To promote a diversified and stable economy by encouraging compatible industrial

---

[3] Section 8.2 of the Torrington zoning regulations provides in relevant part: "8.2.1 The Planning and Zoning Commission shall decide on all applications for special exception. In granting or denying a special exception the Commission shall state upon the record the reasons for its decision.

"8.2.2 In addition to any conditions found elsewhere in these regulations, the Commission shall grant a special exception only if the Commission finds that the proposed special exception will not:

"A. create or aggravate a traffic, fire or other safety hazard;

"B. hamper the City's traffic circulation;

"C. be detrimental to the existing neighborhood or its residents; or

"D. be detrimental to the longterm protection of a public water supply watershed. . . ."

development and . . . the operation of existing industries. Objectives: Provide sufficient prime industrially zoned land in suitable locations to allow for expansion and growth. . . . Locate industrial development in areas zoned for such use with consideration given to the reasonable demand for such land, to the environmental suitability of the land, to the availability of adequate access and public services, and to the compatibility of surrounding land uses. Protect industrial land from loss to residential and retail development. . . ."

Hoben's June 25, 1997 report to the commission applied the criteria of § 8.2 to the plaintiff's application. He concluded that the application met the criteria, although he recommended a larger buffer zone between the mining operation and Burr Mountain Road.[4] Hoben

[4] The relevant portion of Hoben's June 25, 1997 report stated: "During the course of the public hearing, the applicant has provided the following data in support of its application and in response to the special exception criteria contained in section 8.2:

"A. Traffic/Fire/Safety Hazard: The applicant does not intend to utilize Burr Mountain Road for access to the excavation operation. Overall, the excavation operations are not high traffic generators, and the existing capacity of Winsted Road is adequate for the proposed operation. Site lines are adequate for access to and from the site. Signs will be posted warning of trucks entering the highway. The excavated area will be fenced, and the applicant has stated that the appropriate standards will be observed relative to the size and location of blasting charges. On the basis of the above information, I would recommend that the applicant has demonstrated compliance with the special exception criteria, as it relates to not creating or aggravating traffic, fire or other safety application.

"B. Traffic Circulation: The criteria is pertinent when a special exception use involves the layout of new roads or modification to the city's existing road system. This is not applicable to this application.

"C. Protection of Public Water Supply Watershed: This criteria is not applicable to this application.

"D. Detriment to Existing Neighborhood or Its Residents: The applicant's engineer presented testimony to the effect that it was highly unlikely that the excavation operation would have detrimental effects on structures or wells on neighboring properties. This was based primarily on the physical distance separating the operation as well as on the character of the material being mined. Certainly as regards the Lake Ridge and the Burr Pond State Parks areas, the significant separating distances as provided by the applicant are convincing in demonstrating that there is unlikely to be any effects on

recommended ten conditions be required of the plaintiff if the commission granted the special exception. The plaintiff was willing to comply with the ten conditions.

The plaintiff's president spoke at the public hearing stating that the plaintiff would be excavating in accordance with the town plan to provide more land for industry. The mining operation was removing steep slopes to grade level, and the plaintiff intended to make the excavated property available for industrial use in the future. Numerous property owners from a residential development called Lakeridge spoke in opposition to the special exception. Lakeridge and the plaintiff's quarry are separated by a distance of one mile. The quarry operated by O & G Industries is one-half mile from Lakeridge and is larger than the plaintiff's.

On the basis of our review of the record, we conclude that there is not substantial evidence to support the commission's denial of the plaintiff's application for a special exception on the ground that it would cause an unacceptable intrusion into a viable residential zone. The Burr Mountain property is on land that cannot be used due to the steep rock structure. The plaintiff was excavating an adjacent property to grade level with the future intention of making the land available for industrial development. O & G Industries operates a

those areas from the proposed excavation. The applicant also presented cross sections to demonstrate the distances, topography and vegetation separating the adjacent residential structures on Burr Mountain Road. Furthermore, the offer was made to increase the distance to 150 feet between the area to be excavated and the rear property lines of the properties on Burr Mountain Road. Given the nature (rock cuts of up to eighty-five feet) and duration (up to fifteen years) of the proposed operation, I would recommend a much greater separating distance between the excavation operations and the residentially occupied properties on Burr Mountain Road. It appears to me that the extension of the most southerly property line of [the plaintiff] westerly to the west boundary of the Rout property is an appropriate point to which the excavation operation should be limited. This would provide a separation distance of approximately 770 feet to the residents on Burr Mountain Road."

larger adjacent quarry. The individuals who own and reside to the west of the Burr Mountain property subdivided and sold a portion of their land to O & G Industries for its quarry operation. The commission granted special exceptions to both O & G Industries' and the plaintiff's quarry operations. The conditions applicable to those special exceptions are similar to the conditions Hoben recommended for the special exception at issue. Although there are two residences in the industrial zone, they are nonconforming uses. There is no evidence in the record of an intrusion into a viable residential zone. For all of the foregoing reasons, the substantial evidence does not support the reason stated by the commission in denying a special exception to the plaintiff. The decision is, therefore, unreasonable and arbitrary. The trial court, therefore, properly sustained the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.