[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These are consolidated appeals taken from the decisions of the defendant, Avon Planning Zoning Commission, approving a site plan application and granting a special exception to the CT Page 14751 defendants Antonino and Lucia Cirinna in order to allow them to resume the sale of gasoline on their property. The property is in a commercial-retail zone.
The plaintiff, James M. Olson, is the owner of a lot to the rear and abutting the Cirinnas' property. Mr. Olson has a non-exclusive right of way over the Cirinnas' property. His lot is used for residential purposes.
On March 25, 1998, the Cirinnas filed applications with the Avon Zoning Board of Appeals for special exceptions and for site plan approval in order to resume selling gasoline from their property. After a hearing commenced on April 28, 1998, and continued on May 12, 1998, the Avon Zoning Board of Appeals approved the applications by votes of five in favor, two opposed on June 9, 1998. Notice of the decisions was sent on June 16, 1998. The appeal from the decisions is taken pursuant to Connecticut General Statutes Section 8-8.
The court finds the issues for the defendants.
AGGRIEVEMENT
Pursuant to Connecticut General Statutes Section 8-8 (a)(1), an "aggrieved person" for the purpose of appealing a decision by a zoning commission includes any person owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the board. As an abutting owner, the plaintiff is aggrieved.
SCOPE OF REVIEW
"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulation, and whether the standards set forth in the regulations and statutes are satisfied." A. P. W.Holding Corporation v. Planning and Zoning Board, 167 Conn. 182,185, 355 A.2d 91 (1974); Quality Sand and Gravel, Inc. v.Planning and Zoning Commission, 55 Conn. App. 533 ___ A.2d ___ (1999).
"The trial court, in reviewing the decision of the [zoning authority] [is] required to `determine only whether the assigned grounds [for the board's decision] are reasonably supported by CT Page 14752 the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations.'" Caserta v. Zoning Board of Appeal of Milford,226 Conn. 80, 626 A.2d 744 (1993).
"Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Caserta v. Zoning Board of Appeals, supra.
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." Quality Sand and Gravel, Inc. v. Planning and ZoningCommission, supra; Spectrum of Connecticut, Inc. v. Planning andZoning Commission, 13 Conn. App. 159, 163-64, 535 A.2d 382, cert. denied 207 Conn. 804, 540 A.2d 373 (1988). Similarly, where the zoning commission acts upon a site plan application, it acts in an administrative capacity. Norwich v. Norwalk Wilbert Vault Co.,208 Conn. 1, 12, 544 A.2d 152 (1988). On appeal, the question for the court is whether the application submitted conformed to the zoning regulations. See Kosinski v. Lawlor, 177 Conn. 420, 427,418 A.2d 66 (1979).
FACTS
The following facts are relevant to the issues raised in the consolidated appeals. The defendants, Antonino and Lucia Cirrina, are the owners of property located in a commercial-retail zone on Route 44 in Avon. The property had been a gas station since the 1950's, prior to the date on which Avon's first zoning regulations became effective. The property was nonconforming to the Avon Zoning Regulations with respect to size, setbacks, and use. The Cirinnas purchased the property in 1976 and continued to use the property as a gas station and an automobile repair business until approximately 1983 when they ceased selling gasoline. They continued using the property to repair automobiles. In 1979 and again in 1988, the Cirinna's sought permission from the Zoning Board of Appeals to expand their automobile repair business. They were successful in 1979. In 1988, Mr. Cirinna indicated his intention to abandon his right to sell gasoline if his application was approved. The application was not approved by the Zoning Board of Appeals. Mr. Cirinna annually renewed his license to sell gasoline. In 1989, pursuant CT Page 14753 to regulation of the Department of Environment Protection, the underground gasoline storage tanks were removed.
In 1998, the Cirinnas filed applications for site plan approval and for special exceptions seeking to resume selling gasoline and placing an identification and gas price sign on the property.[1]
At the hearing on April 28, 1998, the Cirinnas' representative, Bruce Hobin, told the commission that, notwithstanding the Cirinnas' cessation of selling gas in the 1980's, Mr. Cirinna never intended to stop selling gas, and he maintained his state license to do so for that reason. Mr. Cirinna also maintained the pumps in front of the property. At the time of the hearing, Mr. Cirinna was able to obtain a distributor, and he wanted to reestablish the sale of gasoline. Mr. Hobin, the Cirinnas' representative, indicated that the purpose of the application is to modernize and reactivate the gas pumps. He indicated that, in order to comply with zoning requirements, pavement would be removed and landscaping would be added. The site would be more conforming with respect to landscape requirements and regulations. A one-way circulation pattern of traffic was proposed. The repair facility would continue but with fewer cars. A relocation of the right of way was proposed, but, according to Mr. Hobin, relocation of the right of way was not necessary to go forward with the plan. The proposed pumps would be in the same location as the original pumps. A site plan was submitted.
At the hearing, the Cirinnas maintained that since they had a valid nonconforming use, they could not and need not meet the criteria set out in the Avon Zoning Regulations with respect to gas stations and commercial-retail zones.
James Olson's position was that the Cirinnas had abandoned their right to sell gas. He expressed concerns with the number of vehicles in the lot, the proposed moving of the right of way, the possibility of well contamination, and with routing the inbound traffic on the west side of the property. Mr. Olson also attended the continued hearing on May 12, 1998. At that time, he expressed his concern with respect to the right of way and indicated his opinion that the Cirinnas' had intended to abandon their right to sell gasoline. He also expressed concern regarding safety issues and traffic. CT Page 14754
On June 9, 1998, the Cirinnas' applications were discussed at a meeting of the Avon Planning and Zoning Commission. A transcript of that meeting reflects that the issue of whether the Cirinnas' abandoned their right to sell gasoline on the property was addressed. The commissioners discussed the 1988 application for site plan approval which showed a proposed addition to garage bays and the deletion of the gas pumps. It was noted that Mr. Cirinna's remark that he would stop selling gas had been conditional on the site plan approval. The commission also noted the fact that the Cirinnas had continued to renew their license to sell gasoline every year at a substantial fee. Having determined that the issue of abandonment would be decided in favor of the Cirinnas, the commission then discussed various conditions which would be attached to the granting of the special exception and the site plan approval. By a vote of 5-2, the commissioners approved the applications for the special exception and site plan approval subject to the following conditions:
1. Applicants shall develop a traffic control plan which shall meet with traffic authority approval.
2. Plans shall be modified to show a larger area striped within the paved apron in front of the five garage bays designating this area as "No Parking".
3. The Zoning Data Table shall be modified to reflect statistics relating to existing conditions.
4. A portion of the paved parking lot located to the rear shall be eliminated to improve the amount of landscaped area on the site while maintaining a 24-foot aisle and two 18-foot parking aisles. Landscaping to the Town Planner's approval shall be provided to approximate the equivalent to a "B" Buffer yard in that area. Landscaping shall be completed no later than September 30, 1998. Bonding shall be provided in an amount equal to the value of the improvements (including removal of pavement and landscaping) prior to the issuance of a building permit.
5. Plans shall be modified to show the existing parts and trash dumpster. These dumpters shall be screened utilizing an enclosure similar to other recently approved projects.
6. Plans call for the installation of two 18 foot-high free-standing light poles adjacent to the newly constructed pump island utilizing 400-watt, metal-halide-bulb types. Lighting CT Page 14755 levels shall be reduced. Pole height shall be lowered. Applicant shall develop a lighting plan showing light levels along all portions of the site. Plans shall also reflect lighting proposed in connection with the pumps themselves. All lighting on the existing building and elsewhere on the site shall also be analyzed. All fixtures shall be of the full cut-off type. The level of light intensity shall be to the satisfaction of the Town Planner utilizing the recommended standards in the IES manual. In no instance shall a light fixture contain a bulb size in excess of 250 watts. A lighting plan shall be designed to reduce the intensity of light levels after 10 p. m. in a way that will not create unnecessary, unreasonable glare onto adjacent properties. Approval of said lighting plan shall be subject to evaluation by the Town Planner.
7. No advertising is allowed on the pumps. Plans shall be modified to reflect that the two new gas pumps will not contain any decorative decals, stripes, logos, etc.
8. No unregistered vehicles shall remain on the site for more than 60 days in a calendar year. The maximum number of vehicles stored on this site at any time shall be fifteen. This limitation is equal to the striped parking spaces in the storage lot behind the station. The parking spaces shall be striped in accordance with the Zoning Regulations (9" x 18"). The 15-car limit applies to cars required to be on site for longer periods plus cars that are dropped off for repair and picked up on the same day.
DISCUSSION
Plaintiff raises several challenges to the decisions of the zoning commission which may be incorporated into three issues: Did the Zoning Board of Appeals act unreasonably, illegally, arbitrarily, in abuse of its discretion and in violation of or contradiction to the Avon Zoning Regulation 1. In approving the Cirinnas' site development plan and special exception applications where criteria set out in the Avon Zoning Regulations were not satisfied, 2. In determining that the Cirinnas had not abandoned nonconforming use with respect to the sale of gasoline, and 3. In granting the Cirinnas' applications without requiring them to obtain variances for the proposed enlargement of the fuel pump stations.
Section V-K of the Avon Zoning Regulations permits gas stations as a special exception in a commercial-retail zone CT Page 14756 provided that the premises intended to be used for a gasoline station shall observe the following requirements:
1. Premises shall be located at least 1500' in a straight line from any other property used as a gasoline filling station.
2. Premises shall be located at least 1000' in a straight line from any property used for a church, school, playground, or public park.
3. Gasoline pumps or other filling appliances shall be located at least 40' from any street or property line.
It is undisputed that the Cirinnas' property does not meet these criteria. Section III-C. 1. of the Avon zoning regulations indicates that any nonconforming use of buildings or land lawfully existing at the time of adoption of the regulations may be continued. Moreover, Section 8-2 of the Connecticut General Statutes mandates that a municipality's zoning regulations shall not prohibit the continuance of any non-conforming use, building, or structure existing at the time of the adoption of the regulations. Significantly, C.G.S. § 8-2 further provides that such zoning regulations shall not provide for the termination of any non-conforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. Section 3-C of the Avon zoning regulations indicates that no nonconforming use which has been discontinued for a period of six months shall thereafter be resumed. Examined in conjunction with the mandate of Connecticut General Statutes Section 8-2, the question for the zoning commission was whether the Cirinnas had intended to abandon the right to use the property for selling gasoline. "`Abandonment' is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from circumstances . . . (citations omitted) . . . The mere discontinuance of a use where there is no intent to abandon is not enough. (citations omitted)." To establish abandonment, the `intention on the part of the owner [must be] to relinquish permanently the nonconforming use.' (citations omitted). Because the conclusion as to the intention of the land owner is an inference of fact, it `is not reviewable unless it was one which the trier could not reasonably make.'" Cummings v. Tripp,204 Conn. 67, 93, 527 A.2d 230 (1987). Based on the record, the zoning commission had adequate support for its finding that there was no intention on the part of the Cirinnas to abandon their CT Page 14757 nonconforming use.
The plaintiff maintains that the placement of larger gas pumps and the enlargement of the gas pump island is an increase in a nonconforming structure. The defendants claim that the change in the size of the gas pumps is simply a matter of modernization which would allow the use to continue. "Whereas a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure, we have recognized that certain changes in nonconforming uses represent permissible intensifications within the scope of the valid nonconforming use." Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 243, 662 A.2d 1179 (1995). "The fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an `existing use, provided these are ordinarily and reasonably adapted to make that use available to the owner, and the original nature and purpose of the undertaking remain unchanged.'" Zachs v. Zoning Board ofAppeals of Avon, 218 Conn. 324, 334, 589 A.2d 351 (1991);DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 162,32 A.2d 635 (1943). "This principal is subject to the requirement that the new method be one that is ordinarily and reasonably adapted to make the original use available to the owner and that the original nature and purpose of the undertaking remain unchanged."Connecticut Sand and Stone Corporation v. Zoning Board ofAppeals, 150 Conn. 439, 443, 190 A.2d 594 (1963). In the instant matter, the zoning commission did not make a specific finding that the new pumps and island represent zrmodernization of the equipment that allows the nonconforming use to continue. Notwithstanding that fact, there is sufficient evidence in the record to support such a finding which, in turn, permitted the zoning commission to approve the Cirinnas' site plan and to grant their applications for special exceptions. The court finds that the record was sufficient to support the zoning commission's approval of the site plan and granting of the special exceptions.
Gallagher, J.