[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1098
The plaintiff, Municipal Funding LLC, appeals a decision of the defendant, the Waterbury Zoning Board of Appeals, denying the plaintiff's application for a special exception. The board acted pursuant to General Statutes § 8-6(2) in denying the application. The plaintiff appeals pursuant to General Statutes § 8-8.
 II. PROCEDURAL HISTORY
On February 25, 2000, notice of the board's decision was published in the Waterbury Republican-American. (Return of Record [ROR], Item 5b.) On March 3, 2000, the plaintiff filed an appeal. On June 1, 2000, the defendant filed the return of record.
 III. FACTUAL HISTORY
On February 4, 2000, the plaintiff filed an application for a special exception to allow a convalescent, nursing or rest home, pursuant to § 5.13-13 of the Waterbury zoning regulations, for property located at 300 Schraffts Drive in Waterbury.[1] (ROR, Items 1; 7a.) The plaintiff is the owner of said property, a former hotel, which is located in a commercial artery (C.A.) district and moderate density residence (R.M.) district. (ROR, Items 1; 2b; 4a, p. 48.) The proposed facility would be used by the APT Foundation (APT). (ROR, Items 2b; 4a, p. 34.) APT is licensed by the department of public health, which allows it to treat adults in its DAYTOP program, the department of children and families, which allows it to treat adolescents in its Alpha House program, and the department of education, which allows it to provide educational opportunities and high school diplomas in its high school program. (ROR, Items 2b; 4a, pp. 31-32, 35.) APT, which has its base in New Haven, Connecticut, has been in operation since 1968 and is an affiliate of Yale Medical School. (ROR, Items 2b; 4a, pp. 34, 43.)
 IV. JURISDICTION
A. Aggrievement
General Statutes § 8-8(b) provides in relevant part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes § 8-8(a)(1) provides that: "`Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board." In the present case, the plaintiff, as owner of the subject property, is CT Page 1099 aggrieved by the defendant's decision. See Winchester Woods Associatesv. Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953
(1991); Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39
(1968).
B. Timeliness of the Appeal and Service of Process
General Statutes § 8-8(b) provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes." Notice of the board's decision denying the plaintiff's special exception application was published on February 25, 2000. (ROR, Item 5b.) Pursuant to General Statutes § 8-8(e), a sheriff served the chairman of the board and the town clerk, respectively, by leaving appeal papers in their hands on March 1, 2000. (Sheriff's Return.) Accordingly, this appeal was timely served on the proper parties.
 V. STANDARD OF REVIEW
"The terms `special permit' and `special exception' have the same legal import and can be used interchangeably." A.P.W. Holding Corporationv. Planning Zoning Board, 167 Conn. 182, 185, 355 A.2d 91 (1974). "A special [exception] allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission,53 Conn. App. 636, 639, 733 A.2d 862, cert. denied, 250 Conn. 921,738 A.2d 658 (1999); Housatonic Terminal Corporation v. Planning ZoningBoard, 168 Conn. 304, 307, 362 A.2d 1375 (1975).
"When ruling upon an application for a special [exception], a planning and zoning board acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 244 Conn. 619,627, 711 A.2d 675 (1998). "Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied . . . Moreover, [i]t is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Brackets in original; citation omitted; internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 639-40; see also Housatonic TerminalCorporation v. Planning Zoning Board, supra, 168 Conn. 307. CT Page 1100
"[A] court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission,55 Conn. App. 533, 537, 738 A.2d 1157 (1999); Suffield HeightsCorporation v. Town Planning Commission, 144 Conn. 425, 428, 133 A.2d 612
(1957). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved." (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 643. "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission . . . has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 639.
"The burden of proof to demonstrate that the [commission] acted improperly is upon the plaintiffs." (Internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995).
 VI. DISCUSSION
The plaintiff appeals on the grounds that the defendant acted illegally, arbitrarily, in abuse of its discretion and contrary to case law and/or the Waterbury zoning regulations because: it failed to state its reasons for denial of the application on the record; it failed to discuss and consider the applicable regulations; the board's decision is not supported by the record; and the board failed to take into account that the proposed use of the subject facility meets all of the standards and conditions set forth in the regulations. The plaintiff argues that the special permit application is in compliance with the regulations and that there is nothing in the transcript of the public hearing to support a contrary finding, or to support a finding that the proposed use presents any risk to safety or other related neighborhood concerns. Moreover, the plaintiff argues that general standards alone, such as public safety and general welfare, cannot justify a denial of the special exception application. The plaintiff argues that such general standards CT Page 1101 must be interpreted in conjunction with the fixed standards contained in the zoning regulations.
The defendant responds that although it does not have unlimited discretion, its decision to deny the special exception application was an action within its discretion as an administrative agency. The defendant argues that it denied the plaintiff's request for a special exception because the proposed use presented a safety concern for the neighboring residential properties, and the board is authorized under common law and the zoning regulations to deny a special exception application on such grounds. The defendant argues that there is substantial evidence in the record to support its denial of the special exception application on the basis of safety. For example: concerns about the conformity of the proposed use with the neighborhood and the safety and welfare of the neighbors were discussed throughout the public hearing and during the motion to deny; the plaintiff's chief executive officer indicated that the proposed facility would not have a security force and would be unlocked, so there would be nothing to stop a resident from leaving the facility, an occurrence that has happened, albeit not often, at other APT facilities; and the residents would not be allowed to have automobiles, so if they were to leave the facility on foot, they would necessarily enter the surrounding neighborhood.
There is no legal basis to the plaintiff's first argument that the defendant acted illegally, arbitrarily, in abuse of its discretion and contrary to case law and/or the Waterbury zoning regulations because it failed to state its reasons for denial of the special exception application on the record. "Where a zoning board of appeals does not formally state the reasons for its decision [on the record], the trial court must search the record for a basis for the board's decision." Bloomv. Zoning Board of Appeals, supra, 233 Conn. 208. Therefore, this court must search the entire record to determine whether the evidence therein supports the defendant's decision to deny the application.
The record contains the following evidence. APT would use the proposed facility as a long-term, drug free residential treatment facility for approximately 125 adolescents and young adults with severe drug and/or alcohol abuse or dependence problems. (ROR, Items 2b; 4a, pp. 30, 46.) APT provides special educational, vocational and clinical services. (ROR, Items 2b; 4a, pp. 31, 40.) Residents are referred to APT from the department of mental health and addiction services, the department of children and families, the department of education, the department of corrections, school systems, the court support division, or residents can be self-referred. (ROR, Item 4a, p. 36.) Residents are enrolled in the program anywhere between six months and two years. (ROR, Item 4a, p. 36.) Residents who leave the program usually leave because their behavior does CT Page 1102 not comport with the requirements of the intense program rather than they have relapsed into drug and/or alcohol use. (ROR, Item 4a, p. 46.)
Samuel Ball, doctor, director of residential services at APT and an associate professor of psychiatry at Yale Medical School, gave the opinion that addiction is a physical disorder because the brain is altered as a result of the disorder, which does not immediately disappear with the cessation of drug and/or alcohol use, and because of the impact that the drugs and/or alcohol has on the body, which does not disappear once a person has withdrawn from drug and/or alcohol use. (ROR, Item 4a, p. 41.) Abstinence from all mood altering substances is a prerequisite to the program and random drug tests are performed at least once a month. (ROR, Items 2b; 4a, pp. 30, 40.) Any individual who disregards this policy by using drugs will be dismissed from the program. (ROR, Item 4a, pp. 30, 40.)
APT is not a locked facility. (ROR, Item 4a, p. 37.) Because the facility is not locked, there is nothing to prevent a resident from wandering away from the facility. (ROR, Item 4a, p. 37.) Brown stated that based on thirty years of experience, residents rarely wander away from APT, but when they do, they usually return to their homes rather than venturing into the surrounding neighborhood. (ROR, Item 4a, pp. 37-39.) Residents are not allowed to keep automobiles on the property.
APT has approximately fifty staff members, comprised of two physicians, two clinical psychologists (including Ball), four social workers, four Masters level social workers, four nurses, a vocational counselor and a number of residential counselors, many of whom have graduated from the program. (ROR, Item 4a, pp. 37, 42.) Medical services are provided by the on-site licensed nurses, under the supervision of a physician. (ROR, Items 2b; 4a, p. 31.) In addition, the facility does not have a paid security force, so security will have to be enforced by the staff. (ROR, Item 4a, p. 38.)
The record also reflects the following evidence in opposition to the special exception application. The transcript of the public hearing indicates that residents of the area surrounding the proposed facility are opposed to the facility being located in their neighborhood. (ROR, Item 4a, pp. 49-55.) At the public hearing, neighbors of the proposed facility testified that they were concerned about neighborhood safety because the proposed facility would be located in the midst of a condominium association, multi-family dwellings, apartment complexes and condo complexes, where there are many residents who walk around the neighborhood, either late at night or early in the morning; (ROR, Item 4a, pp. 49, 51, 55.); and where there are many elderly residents in the neighborhood who probably will not feel safe in their homes with the CT Page 1103 existence of APT in the neighborhood. (ROR, Item 4a, pp. 53, 55.) Residents testified that there is a perception that the proposed facility will be unsafe for the neighborhood and that the residents will not be secure in their environments. (ROR, Item 4a, pp. 53-55.) A neighbor testified that residents of the subject neighborhood are afraid and have been complaining about the existence of APT in the area. (ROR, Item 4a, p. 53.) In addition, a neighbor testified that he believed the quality of life in the neighborhood would suffer a severe negative impact if APT were located at the proposed site. (ROR, Item 4a, p. 53.) Furthermore, a neighbor testified that the proposed facility would not fit in with the ambiance of the neighborhood. (ROR, Item 4a, p. 49.) Neighbors also expressed concerns that the city of Waterbury already has a number of other facilities, including a substance abuse facility. (ROR, Item 4a, pp. 49, 51-52.)
The public hearing was held on February 22, 2000, in which the plaintiff, APT and its agents discussed the proposed use of the subject facility, and neighbors of the proposed facility voiced their concerns with the location of the facility in their neighborhood. (ROR, Item 4a.) At its regular meeting, held immediately after the public hearing, the defendant voted, with one abstention, to deny the plaintiff's special exception application. (ROR, Item 4a, p. 62.)
"It is not the function of the reviewing court to weigh the evidence or to determine who is credible; that function is exclusively the board's."Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 676 (1989). As reflected above, a review of the record shows that the board had "substantial evidence" to sustain its denial of the special exception application. This court cannot say that the board acted arbitrarily in determining that the application should be denied. For these reasons, judgment is entered dismissing the appeal.
CHASE T. ROGERS SUPERIOR COURT JUDGE