[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. The Appeal
This is the plaintiffs' BC Properties, LLC and Lloyd Terminals, Inc. appeal from a denial by the New Haven Board of Zoning Appeals of their application for (1) renewal of their five-year "junkyard" designated by Special Exception and (2) Coastal Site Plan Review filed in connection therewith.
 II. Background
By application dated May 10, 2001 the plaintiffs appealed to the New Haven Board of Zoning Appeals for a Special Exception to renew a five-year permit for a "junkyard" designated for purposes of limited "processing" at the Marine Terminal located at 34 Lloyd Street and 198 River Street in New Haven. Because the property is waterfront property, located within the coastal management district, the plaintiffs also filed a Coastal Site Plan Application.
Plaintiffs' Marine Terminal, or freight transport facility, is located at the junction of the Quinnipiac and Mill Rivers in New Haven Harbor in a heavy industrial zone in the Fair Haven section of New Haven. The operation has been receiving scrap metal that is loaded onto barges for outgoing transport since 1995 when the City Plan Commission specifically found the Marine Freight Terminal activity consistent with all applicable goals and policies of § 22.a-92 of the Connecticut General Statutes.
In 1996, the plaintiffs applied for and received a Special Exception from the Board of Zoning Appeals together with approval of a second Coastal Site Plan Application for "junkyard" designated to permit "limited processing" in connection with the operation of the Marine Freight Terminal. CT Page 11879
To successfully acquire all necessary permits the applicant was required to comply with the requirements of the Zoning Ordinance of the City of New Haven in the following respects: 1) Section 42.t, Table of Permitted Uses in Industrial Zones; 2) Section 46.G, Junkyards; 3) Section 63.D, Requirements for Special Exceptions; 4) Section 55.b.3, Review and Administration of Coastal Site Plan Reviews.
The applications which are the subject of this appeal are the plaintiffs' effort to renew the 1996 approval for an additional five years. The applications had been referred to the City Plan Commission for a recommendation as required by § 63E.2.b of the New Haven Zoning Ordinance. The Plan Commission's Report 1307-08 found "the proposed activity consistent with the applicable goals and policies of § 22a-92
of the Connecticut Coastal Management Act" and recommended approval of both the Coastal Site Plan and the Special Exception Application with modifications and conditions for a two-year period.
Notwithstanding the recommendation and findings of the City Plan Commission the Board of Zoning Appeals on July 31, 2001 voted four-to-one to deny the Special Exception and four-to-one to reject the City Plan Commission coastal management findings.
 III. Aggrievement
At the hearing on this matter, the applicants proved that they were the owners of the subject property at the time of the denial and have continued to own it up to and including the date of the hearing. Aggrievement was not seriously contested and the court finds that the parties are aggrieved.
 IV. Discussion
"When considering an application for a Special Exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standard set forth in the regulations and statutes are satisfied." Quality Sand and Gravel, Inc. v. Planning andZoning Commission, 55 Conn. App. 533, 537 (1999). The board has no discretion to deny a Special Exception if the regulations and statutes are satisfied. Quality Sand, 55 Conn. App. at 537.
In denying the applications the Board of Zoning Appeals set forth twenty findings which in its opinion justified the denial of both the Special Exception and the site plan review. CT Page 11880
Those findings were as followings:
 "[1] Lloyd Terminal is a sloppy operation that allows scrap to fall into the river where rapid currents move it up and down stream.
 [2] Overloaded barges also allow scrap to fall into the river and that such scrap poses navigational hazards.
 [3] The facility has a "negative aesthetic" on the coastline.
 [4] Negative aesthetics, noise, and excessive truck traffic are injurious to the neighborhood.
 [5] The site allows toxic substances from the toxic materials and heavy metals materials processed at the junkyard to leach through the ground or by falling directly into the water, as has occurred in the past. Many of these substances tend to be concentrated in the tissues of fish and shellfish, making them hazardous for human consumption.
 [6] The steel bulkhead along the Quinnipiac River has substantially deteriorated along most of its length, which is a further degradation from its 1997 condition.
 [7] Storage piles are larger than permitted (in square footage) and are higher than approved.
 [8] A number of 20 foot height markers are absent even though required.
 [9] The tracking pad at the steel face entrances have disintegrated and have not been renewed, despite the fact that they are required as a condition of prior approval.
 [10] The applicant treats Lloyd Street as its private property, using the street for storage of junk, parking of trucks and equipment, and cueing [sic] of trucks.
 [11] On several occasions substantial activity within Lloyd Street was observed and overnight storage of vehicles within the right-of-way was noted.
 [12] LCI enforcement: Cease and Desist Orders issued CT Page 11881 08/13/1997 regarding scrap pile size and placement, lack of markers and lack of a plan to deal with airborne particles. Lloyd Terminal inspected 07.30.1997 — resulting in correspondence to CTDEP regarding waterward activity [NB — beyond City jurisdiction]. Cease and Desist Orders issued 05.27.2001 regarding expansion of junkyard activity to 142 River Street, parking and storage of dumpsters, trailers and trucks within Lloyd Street.
 [13] CTDEP Notices of Violation. 05.15.1998 for failure to sample water quality as required under the General Permit for Discharge of Stormwater. 07.08.1998 for failure to develop a Stormwater Pollution Prevention Plan as required by Section 5(b) of the General Permit for Discharge of Stormwater associated with industrial activity. 4.04.2001 to stop removal of scrap metal from the Quinnipiac immediately waterward of the bulkhead, as such activity requires State authorization (§ 22a-361 or 22a-363b CGS). A permit application was required to be filed within 45 days of the Notice of Violation (i.e. by 05.19.2001), and was not.
 [14] The City's Riverkeeper monitored and confirmed 15 logged complaints over the past several years concerning materials falling into the river and, operation of the site beyond approved hours.
 [15] Runoff of oily residue from scrap material flows into the waters adjacent to the site without proper containment or maintenance of runoff control. The applicant is responsible for regular maintenance of the storm drainage mechanisms on site, and has not demonstrated that any such maintenance is conducted on a regular basis.
 [16] The applicant stated in its original application that the baling and cutting process would reduce the visual impact of the scrap piles. However, no reduction in the substantial visual impact through baling and cutting has occurred in the past five year's [sic] operation.
 [17] The information that the applicant provided is minimal at best, and the credibility of the applicant's information/testimony is found to be poor; high credibility is given to the testimony of the New Haven Riverkeeper and a member of the Q River Watershed Assoc.
CT Page 11882
 [18] The applicant has not provided mitigation measures for locating a facility with negative visual impact potential on a waterfront site.
 [19] The Board finds significant impacts because of the operational shortcomings of the applicant, and therefore denies the renewal request.
 [20] The use is inconsistent with the Coastal Management Act and the New Haven Coastal Program, the use will impair present and future development in the area, the use is in close proximity to dwellings, churches, schools and other public uses."
The only finding which appears to directly address the Coastal Management Act is finding no. 20. The Court must first examine Section 63.D.3 and Section 46.G of the New Haven Zoning Ordinance to determine whether the Board of Zoning Appeals gave any valid reason for the denial of the special exception.
Section 63.D.3 provides:
 "Special exception shall be granted only when the Board of Zoning Appeals finds that the proposed use or feature of the proposed extension or substantial alteration of any existing use or feature is in accord with the public's convenience and welfare after taking into account. where appropriate;
 (a) the nature of the proposed site, including its size and shape and the proposed size, shape and arrangement of structures;
 (b) the resulting traffic patterns and adequacy of proposed off street parking and loading;
 (c) the nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future development;
 (d) the proximity of dwellings, churches, schools, public buildings and other places of public gathering;
(e) all standards contained in this ordinance; and
 (f) the comprehensive plan of the City of New Haven and other CT Page 11883 expressions of the purpose and intent of this ordinance.
 Section 46.G provides the guidelines for junkyards in the City of New Haven. The portions of that section most clearly pertinent to this permit are as follows:
 1. JUNKYARD: Any land, structure or land and structure in combination, used for the storage, bailing, packing, sorting, handling, dissembling, purchase or sale of any material or materials which are used, salvaged, scrapped or reclaimed but are capable of being reused in some form, including, but not limited to metals, bones, rags, fibers, paper, cloth, rubber, rope, bottles, machinery, tools, appliances, fixtures, utensils, lumber, boxes, crates, pipe, pipe fittings, tires, motor vehicles and motor vehicle parts. . . .
 3. No material shall be placed in any junkyard in such a manner that it is capable of being transferred out of the junkyard by wind, water, or other natural causes
. . . .
 11. A violation of this zoning ordinance shall be considered to reflect upon whether a person is suitable for the issuance of renewal of a junkyard license by city authorities, and may be considered a cause for revocation of such licenses.
The City argues that the plaintiffs attempt to transform advisory reports from the City Plan Commission and Traffic Department into mandatory reports; the City further argues that the plaintiff seemed to imply that some property right had attached to their now expired five-year junkyard permit. Whether or not the applicant can be said to be fairly making these claims, the court recognizes that neither claim is correct as a matter of law. The court's sole concern is examining the reasons given by the City and comparing them to the applicable regulation to determine whether the City was justified in denying the applicant's request.
Reasons 1 through 19 appear to apply to the denial of the special permit. The court agrees with the applicant that reasons 1, 2, 5, 13, 14 and 15 deal with environmental concerns beyond the jurisdiction of the Board of Zoning Appeals when considering the junkyard designation. Section 63.D.3 requires the Board of Zoning Appeals to take into account CT Page 11884 specific considerations and environmental impact is not among those considerations. Reasons 1, 2, 5, 13, 14 and 15 may not serve as a basis for the Board of Zoning Appeals decision not to renew the junkyard designation.
The court further concludes that reasons 3, 4, 16, 18 and 19 are primarily concerned with aesthetic consideration which are not proper in relation to the requested "limited processing" request for cutting, bailing and logging of material. They are not pertinent to the considerations which the agency is required to apply under the zoning regulations and are therefore not a valid basis for denial. There is no evidence in the record which supports "negative aesthetics, noise and excessive truck traffic" as a result of the "junkyard designation for limited processing." To the extent that the aesthetic considerations are proper, they relate to the operation of the marine terminal in general and not the special permitted use under consideration.
Further, there is little real evidence to support findings three and four relating to traffic. The absence of that evidence is made glaring by the findings of the Director of the Department of Traffic and Parking of the city who specifically found "no impact" and represented "no change from existing use."
Finding no. 6 is not within the Board of Zoning Appeals jurisdiction and has no basis in Section 63-D-3. Consequently it is not a valid basis for the denial of the permit.
Finding no. 12 is alleged to be supported by three violations, the first of which is a cease and desist order no. 08.13.1997. This order is referred to in the findings but appears nowhere else in the record. The applicant was given no opportunity to comment on it. In and of itself, it does not support a denial of the permit. Cease and desist order no. 05.27.2001 is the very order which was overturned by the same agency at the same meeting. It is difficult to see how an order overturned by the agency can form the basis for a denial of a permit. The DEP order appears to be beyond the contemplation of the regulation in question.
Finding 17 states "information that the applicant provided is minimal at best, and the credibility of the applicant's information/testimony is found to be poor; high credibility is given to the testimony of the New Haven Riverkeeper and a member of the Q River Watershed Association." The court finds no evidentiary basis for the conclusion that the application was incomplete or that the material was minimal. The court sees no particular basis for the agency's skepticism regarding the applicant's information and testimony neither does the court see any obvious basis CT Page 11885 for giving high credibility to the testimony of the riverkeeper and a member of a watershed association. The court acknowledges that the agency and not the court is the finder of fact. However, even assuming these factual findings by the Commission, without more, they do not furnish a basis for denying the permit.
With regard to finding 20 concerning the Coastal Management Act and the New Haven Coastal Plan, the Agency found "the use will impair present and future development in the area, the use is in close proximity to dwellings, churches, schools and other public uses. The court can find no substantial evidence that this finding is any more true now than at the time the permit was first issued. While the court does not regard the applicant as having any vested property right in the re-issuance of the permit, there must be some evidence of change of circumstances to justify the Agency's conclusion. The court notes that the City Plan report viewed the matter as follows:
 [W]hile the visual impact of placing ferris metal in this location may not be visually pleasing, the storage cannot really be considered a significant alteration to the natural vistas and viewpoints as the surrounding area is industrial and of similar nature.
Finally, the court finds that findings 7, 8, 9, 10 and 11 are not proper grounds within the applicable regulations for denying the permit for a "junkyard" designated for limited processing." The agency was not considering the operation of the terminal itself itself. . .
When an agency fails to provide proper reasons for denying an application, and when the reasons that were provided are not substantiated by the evidence before the agency, there may be a valid claim of predisposition and predetermination. Marmah v. Town of Greenwich,176 Conn. 116, 119 (1978). This court is not prepared to find predisposition as a fact, it does find some merit to the applicant's criticism of "the well publicized hostility of the city toward the plaintiff's facility." The haste with which the Board of Zoning Appeals sought to conclude its business at the July 10, 2001 public hearing, notwithstanding plaintiff's request to continue to hearing, contributes to an impression that the proceedings lacked the fundamental fairness to which all land use applicants are entitled. The application had been referred to the City Plan Commission for an advisory report. In advisory report 1307-08, dated July 25, 2001, the Commission found "the proposed activity consistent with applicable goals and policies in Section 22a-92
of the Coastal Management Act" and recommended approval of both the coastal site plan and special exception application with modifications CT Page 11886 and conditions for a two-year period. The Commission specifically found that with the conditions of approval and safeguards it recommended, the requirements of Section 63.D of the Zoning Regulations governing special exceptions were fully met. The Commission provided a detailed eight-page discussion of the factors which it considered in reaching its conclusions.
Section 8-8 (k) of the Connecticut General Statutes provides that in a zoning appeal the court "may reverse or affirm, wholly or in part or may modify or revise the decision appealed from. If a particular board action is required by law, the court on sustaining the appeal may render a judgment that modifies the board's decision or orders the particular board's action. . . ."
Having carefully read the detailed report of the City Plan Commission the court believes that that report reflects action required by law.
The court sustains the appeal of B C Properties, LLC and Lloyd Terminals, Inc. The court orders the New Haven Board of Zoning Appeals to find that the proposed activity is consistent with the applicable goals and policies of Section 22a-92 of the Coastal Management Act. It further orders the Board of Zoning Appeals to approve the Coastal Site Plan and the special exception applications with the modifications and conditions recommended by the City Plan Commission for a two year period.
BY THE COURT
 ______________________ Kevin E. Booth, J.
CT Page 11887