## THE CHILDREN'S SCHOOL, INC. *v.* ZONING BOARD OF APPEALS OF THE CITY OF STAMFORD
### (AC 20469)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued February 22—officially released November 6, 2001

*James V. Minor*, assistant corporation counsel, with whom, on the brief, was *Andrew McDonald*, director of legal affairs, for the appellant (defendant).

*Charles E. Coates III*, for the appellee (plaintiff).

SCHALLER, J. The defendant, the zoning board of appeals of the city of Stamford (board), appeals from the judgment of the trial court reversing its denial of an application for a special exception submitted by the plaintiff, The Children's School, Inc. On appeal, the board claims that the court improperly (1) concluded that the board lacks the discretion to deny a special exception for the expansion of a private school in a residential district and (2) substituted its judgment for that of the board in concluding that the board did not have substantial evidence on which to deny the special exception. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff school is located on approximately one acre of land in a residential section of Stamford that is zoned for single-family residences with a minimum lot area of one acre. In 1997, the plaintiff acquired an approximately 1.3 acre adjoining parcel of land. The plaintiff applied to the board for a special exception to construct an addition to the existing school, to install a new septic system and to construct a new parking area and driveways. If granted, the size of the school building would have increased from 3572 square feet to 11,573 square feet and the enrollment of the school from 103 students to 160 students.

Public hearings were held on the application on four separate days. The board received 116 letters in opposition to the application, 85 letters in favor of the application and 281 signatures on a petition in opposition to the application. Forty-three families in the area opposed the proposed expansion of the school.

The board denied the plaintiff's application on February 11, 1998. In its certificate, the board found "that

the intensity of the proposed utilization would be in conflict with the orderly development and basic character of the residential neighborhood."

On March 6, 1998, the plaintiff appealed from the board's decision to the trial court. The plaintiff contended that the board failed to give proper reasons for denying the application and that the decision was not supported by reliable, probative and substantial evidence. The court reversed the board's decision, concluding that the board possessed limited discretion to deny an application for a special permit and that the decision of the board was not supported by substantial evidence. Thereafter, the board brought this appeal. Additional facts will be provided as necessary.

I

Before reaching the merits of the appeal, we must first address the jurisdictional question of whether this appeal is properly before us from a final judgment. The court "remanded [the] case back to the board of appeals for proceedings consistent with [its] opinion," further indicating that it had "not approved the application." When counsel for the plaintiff sought clarification on the scope of the remand as to whether the hearing on remand would be "de novo" or "just for consideration of the question of conditions to its approval," the court replied that "the underlying agency . . . is required to do what the remand says. . . . That's what they're required to do. No more and no less."

Because of the uncertainty surrounding the role of the board on remand, this court sua sponte ordered articulation concerning the trial court's remand to the board to determine whether the decision constituted a final judgment. The trial court responded that "[o]n remand the [board] of the city of Stamford shall consider the application approved, and the remand . . . is limited to considering only the conditions of approval."

The court also stated that "[e]ven though the remand to the [board] of the city of Stamford is limited to considering only the conditions of approval, the board's decision may be based not only on the evidence submitted at the original hearing but additional evidence of events or conditions that have occurred since the original hearing."

"The lack of final judgment is a threshold question that implicates the subject matter jurisdiction of this court. . . . If there is no final judgment, we cannot reach the merits of the appeal." (Citation omitted; internal quotation marks omitted.) *Dacey* v. *Commission on Human Rights & Opportunities*, 41 Conn. App. 1, 4, 673 A.2d 1177 (1996). Our Supreme Court has stated that "[w]ithout dictating the outcome of the further administrative proceedings, the [trial] court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. . . . Such an order is not a final judgment." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Commissioner of Environmental Protection*, 233 Conn. 486, 499, 659 A.2d 714 (1995).

Unlike the order before this court in *Dacey* in which we held that an order that "explicitly directs the [agency] to make further evidentiary findings that will lead to a final administrative resolution of the issues raised by the parties" is not a final judgment; *Dacey* v. *Commission on Human Rights & Opportunities*, supra, 41 Conn. App. 7; the order in the present case specified that the decision "*may* be based . . . on . . . additional evidence of events or conditions that have occurred since the original hearing." (Emphasis added.) As our Supreme Court stated in *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 130, 653 A.2d 798 (1995), "[w]e attach significance to the fact that the trial court's judgment did not order further evidentiary determina-

tions on remand. Although the trial court's remand may have *allowed* the commission to hear additional evidence in order to determine whether to impose 'reasonable conditions' on or to make 'reasonable changes' in the application, the remand in no way *required* the commission to conduct such an inquiry." (Emphasis in original.) We conclude that the decision of the trial court in this case does constitute a final judgment because, although further evidentiary determinations may be made by the board, such determinations are not required; see *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 310–11, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995); and because the decision instructs the board to approve the application and to consider only the conditions of approval. See *Kaufman* v. *Zoning Commission*, supra, 131. We now proceed to the merits of the claims.

## II

The board first claims that the court improperly concluded that the applicable zoning regulations did not accord the board the discretion to deny a special exception for the expansion of a private school located in a residential district. We agree.

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. . . . It has no discretion to deny the special exception if the regulations and statutes are satisfied. . . .

"The general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. . . . [B]efore the zoning commission can determine whether the specially permitted use is compatible

with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. . . . Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing. . . .

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . .

"If, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. . . . In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency." (Citations omitted; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 537–39, 738 A.2d 1157 (1999).

The board's denial of the application for the special exception rested on the "intensity" of the proposed use. The court's decision rested on the interpretation of two subsections, § 19-3.2 (a) and (e), of the Stamford zoning regulations, which were referred to as "general" and "specific" intensity regulations, respectively.

Section 19-3.2 (a) provides that the exception "shall be granted by the reviewing board only upon a finding that the proposed use or structure or the proposed extension or alteration of an existing use or structure is in accord with the public convenience and welfare . . . ."[1] The board may grant a special exception after

---

[1] Section 19-3.2 of the Stamford zoning regulations provides in relevant part:

"a. Special Exceptions shall be granted by the reviewing board only upon a finding that the proposed use or structure or the proposed extension or alteration of an existing use or structure is in accord with the public convenience and welfare after taking into account, where appropriate:

"(1) the location and nature of the proposed site including its size and configuration, the proposed size, scale and arrangement of structures, drives and parking areas and the proximity of existing dwellings and other structures.

"(2) the nature and intensity of the proposed use in relation to its site and the surrounding area. Operations in connection with special exception uses shall not be injurious to the neighborhood, shall be in harmony with the general purpose and intent of these Regulations, and shall not be more objectionable to nearby properties by reason of noise, fumes, vibration, artificial lighting or other potential disturbances to the health, safety or peaceful enjoyment of property than the public necessity demands.

"(3) the resulting traffic patterns, the adequacy of existing streets to accommodate the traffic associated with the proposed use, the adequacy of proposed off-street parking and loading, and the extent to which proposed driveways may cause a safety hazard, or traffic nuisance.

"(4) the nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future development.

"(5) the Master Plan of the City of Stamford and all statements of the purpose and intent of these regulations.

"b. In granting a Special Exception the reviewing board may attach reasonable conditions and safeguards as it deems necessary to protect the general health, safety, welfare and property values of the neighborhood. Failure to comply with any such conditions shall constitute a violation of these Regulations. . . ."

considering, where appropriate, "the nature and intensity of the proposed use in relation to its site and the surrounding area. . . . " Stamford Zoning Regs., § 19-3.2 (a) (2). Both the board and the court referred to the "intensity" consideration as relevant to their determinations.

The board went no further than its consideration of § 19-3.2 (a) in denying the application. The court, however, found § 19-3.2 (e), titled "Special Standards for Single Family Districts," significant in reversing the decision of the board. We disagree with the court's interpretation and application of the two zoning regulations.

"[T]he interpretation of provisions in the ordinance is . . . a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]. . . . Rather, the court determines legislative intent from the language used in the regulations. . . . We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Citations omitted; internal quotation marks omitted.) *Northeast Parking, Inc.* v. *Planning & Zoning Commission,* 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).

The court, in its decision, discussed the effect of § 19-3.2 (e),[2] which specifically delineates requirements for

_____

[2] Section 19-3.2 (e) of the Stamford zoning regulations provides: "In addition to the other standards and requirements of these Regulations, all applications for special exception uses within the RA-3, RA-2, RA-1, R-20, R-10 and R-7.5 single family districts shall conform to the review standards of Section

applications for special exceptions within the zone at issue in this case. The court characterized § 19-3.2 (a), describing relevant considerations in granting a special

7.2-C Site Plan Review Standards for Review, and to the following additional special standards. The special standards of this section shall not however apply to Group Day Care Home (#22), Hospital Complex (#47) or Senior Housing & Nursing Home Facility Complex (#92.1). Existing non-residential uses and non-residential structures, established or erected prior to September 13, 1993 which do not conform to the standards of this Section 19-3.2 (e), may be continued, rehabilitated, altered, extended, expanded or changed to a new special exception use provided that required approvals are obtained and provided that existing non-conformities with the standards of this Section shall not be increased and no new non-conformities shall be created. . . .

   "(1) Minimum Lot Size: the area of the lot shall be not less than twice the minimum lot size required for a single family dwelling.

   "(2) Floor Area Ratio: the total gross floor area of all uses contained within buildings,including residential use and parking structures, divided by the area of the lot shall not exceed the following standards: RA-3 and RA-2 Districts 0.10; RA-1 and R-20 Districts 0.15; R-10 District 0.20; R-7.5 District 0.25.

   "(3) Ground Coverage: the total percentage of a lot occupied by buildings, parking areas, driveways, walkways, patios, terraces and other impervious surface areas shall not exceed the following standards: RA-3 and RA-2 Districts 25 [percent]; RA-1 and R-20 Districts 35 [percent]; R-10 District 45 [percent]; R-7.5 District 60 [percent].

   "(4) Building Setbacks: All buildings shall be setback from front and side property boundaries by an amount not less than the minimum setback specified in Appendix B plus six (6) inches for each foot of building length in excess of forty (40) feet, such length measured parallel to the property boundary. Building setback from a side property line shall not be required to exceed forty (40) feet and setback from a front property line shall not be required to exceed twice the minimum front setback standard of Appendix B.

   "(5) Landscape Buffers: Landscaped buffer areas shall be provided along the front property line with a width not less than 50 [percent] of the minimum front setback standard of Appendix B, and shall be provided along all side and rear property boundaries with a width of not less than ten (10) feet. Required buffer areas shall be maintained as unoccupied landscaped open space and shall not be used for parking, driveways, or accessory structures, other than required curb cuts necessary to access the site and pedestrian walkways and similar improvements as approved by the reviewing board. The perimeter of all buildings shall be suitably landscaped with a planted area an average width of not less than ten (10) feet for not less than 75 [percent] of the building perimeter, provided that up to 6 feet of this buffer width may consist of pedestrian walkways. Not less than 10 [percent] of

application, as a general requirement imposed on the relevant zone, and § 19-3.2 (e) as a specific or numerical requirement.

The court described the issue as "whether or not a zoning board is entitled to take a look at the general regulations and determine that the special exception standards have not been complied with, or whether or not a zoning board is limited to such, as in a site plan, to the specific numerical type regulations, and if they meet those numerical type regulations, then the board has no discretion and must grant them." The court concluded that *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627, 711 A.2d 675 (1998),[3] stands for the

the interior area of vehicle parking areas shall be devoted to landscaped islands and dividers which shall be planted with not less than one shade tree with a minimum caliper of 2.5 inches (dbh) for every ten parking spaces or fraction thereof.

"(6) Separation of Uses: In order to preserve the essential character of residential neighborhoods and avoid undue concentration of non-residential uses, no special exception application shall be approved authorizing a new nursing home (#69), church (#23), clinic (#23.1) or public charitable institution (#79) within 1000 feet of any other such uses. Existing uses authorized prior to the effective date of this regulation shall be exempt from this separation requirement and may be continued, altered, changed in use or expanded in conformance with applicable standards of these Regulations.

"(7) Staff Review: All applications for special exception within single family districts shall be referred to the Planning and Zoning Director for staff review of site and architectural plans at least thirty (30) days prior to the scheduling of a public hearing on such application."

[3] The court refers to *Irwin* as "a major change in the way courts and zoning boards and commissions viewed their obligations." The court quoted the following language in analyzing whether the board should have accorded § 19-3.2 (e) greater weight: "Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations." *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 628. We further note that, in *Irwin*, the Supreme Court reversed this court's judgment that reversed the Litchfield planning and zoning commission's denial of an application for a special exception. It is further worth noting that the "general" and "specific" regulations in *Irwin* were as follows: "Interior lots may be permitted in a subdivision only where the application meets the following criteria and requirements . . .

proposition that "there are two sets of conditions that must be met, the numerical conditions and those of the general conditions, and that when a board or commission puts in specific numerical conditions and specific standards for staff review and other matters to take in care of the general conditions, that the board still has [the] discretion to make a determination as to whether the general conditions have been complied with. But they must—that discretion, by definition, must be narrowly construed by reason of the fact that the issue of intensity is already specifically dealt with in the regulation." The trial court thus concluded that, because the application failed only one of the criteria in § 19-3.2 (e), and the proposal was later modified to accommodate the deficiency in the application, the board did not have the discretion to deny the application.

In interpreting the regulations provided in § 19-3.2 (a) and (e), the court treated the specific requirements of the latter as virtually replacing the general requirements of the former. The court thereby construed "intensity" in § 19-3.2 (a) (2) as being defined and limited by the "spe-

"a. General: The applicant shall show that the design and layout of the subdivision with the proposed interior lots will be in keeping with the Town Plan of Development.

"b. Specific: The applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road. . . ." Id., 620 n.2.

We cannot read *Irwin* as justification for the court's interpretation in this case. The Supreme Court in *Irwin* agreed with the defendants' claim that "the Appellate Court improperly concluded that the zoning commission cannot exercise any discretion in deciding a special exception application, and that the Appellate Court substituted its own judgment for that of the trial court and the zoning commission, resulting in an improper remand of the case." Id., 626. *Irwin*, if applicable at all to the interpretation in this case, would appear to caution against construing regulations in a manner that unduly restricts the discretion of a zoning board.

cific" considerations listed in § 19-3.2 (e). This restrictive interpretation of "intensity" is not apparent from the plain meaning of the regulations. Section 19-3.2 (e) imposes requirements "[i]n addition to the other standards and requirements of these Regulations," which would necessarily include those imposed by § 19-3.2 (a) (2). Section 19-3.2 (e) cannot be reasonably construed as limiting language, as it provides no express reference to § 19-3.2 (a) and expressly incorporates standards from other portions of the zoning regulations. See *Santini* v. *Zoning Board of Appeals*, 149 Conn. 290, 291, 179 A.2d 621 (1962) (no limitation where not expressed in or implied from plain language of regulation). The language, therefore, permits the board to grant or deny applications for special exceptions based on the "general" considerations provided in § 19-3.2 (a) and (e), which do not expressly limit the board's review in the special application process. The trial court, therefore, improperly restricted the board's discretion through its interpretation of the relevant regulations.

The court's interpretation had the effect of limiting the discretion of the board to deny an application for a special exception. It is settled law that a board "has no discretion to deny [a] special exception if the regulations and statutes are satisfied." (Internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, supra, 55 Conn. App. 537. By restricting the board's review to the considerations under § 19-3.2 (e), the court unduly restricted the criteria for granting or denying a special exception and similarly restricted the discretion of the board. The trial court thus concluded that the board's determination was arbitrary. The court found that "the board did have the discretion to make a determination as to the general considerations and, failing to take in the specific findings in the staff recommendations [as to whether the criteria in the specific regulation was met], was violative

of [its] discretionary function." Furthermore, the court concluded that "[t]he board failed to consider the benefit of the intensity regulations [in § 19-3.2 (e)] that were imposed in 1994 on the board's discretion." By interpreting the regulations as it did, the trial court improperly limited the discretion of the board to deny the application for a special exception.

## III

The board next claims that the court improperly substituted its judgment for that of the board when the court concluded that the board did not have substantial evidence on which to deny the special exception. We agree.

"The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved." (Internal quotation marks omitted.) *Raczkowski* v. *Zoning Commission*, 53 Conn. App. 636, 643, 733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999).

"Ordinarily, the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . The trial court's findings will be upheld unless we find that they are unsupported by the evidence or . . . are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Osborne* v. *Zoning Board of Appeals*, 41 Conn. App. 351, 354, 675 A.2d 917 (1996).

"The evidence, however, to support any such reason must be substantial . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citation omitted; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, supra, 55 Conn. App. 540.

The court described a number of relevant considerations in determining whether a proposed use is too intense for the surrounding area. The court noted, and we agree, that "traffic considerations, traffic safety, health considerations such as adequate drainage and adequacy of septic system, are considerations that are subsumed in the phrase 'intensity.' " We, therefore, review the record to determine whether the board's conclusion that the proposed use is too intense for the surrounding area is supported by substantial evidence.

The board, in denying the application, made a number of observations on the proposed plan. It stated that "the number of children going in and out of that small piece of property in that small neighborhood, in that confined neighborhood, is just . . . too many." The board conceded that the engineering plan for the proposed expansion was "a well done plan." One board member stated that she had visited the site on three occasions and had encountered heavy traffic at the intersection near the school. The board voted four to one to deny the application.

The court, in reviewing the decision of the board, considered that the "current use of the property is nonconforming for the reason that it does not have special exception approval . . . ." Additionally, "if the board found somehow or other that the intensification of this use was an expansion of a nonconforming use, in fact, that finding finds no support whatsoever in the law and the record." The court held the board's decision to be arbitrary for the following reasons: (1) the board failed to consider the relevant intensity limitations contained in § 19-3.2 (e) in arriving at its conclusion on intensity, as it was bound to do; (2) the board failed to consider the staff recommendation on the application as it was bound to do under § 19-3.2 (e); (3) the board failed to consider that granting the application would render most of the nonconforming features conforming; (4) the board failed to consider a student enrollment cap recommended by the planning board at 125 as compared to the present enrollment of 103; (5) the board failed to consider the student per acre figure of a neighboring school with that of the plaintiff and the still lower figure resulting from the application when granted; (6) the board improperly considered the "neighborhood" rather than the surrounding area as required by the regulations; and (7) there was no evidence that the

proposed expansion would adversely affect property values.

Our review of the evidence before the board does not lead us to conclude that the board was clearly erroneous in determining that the proposed expansion was too intense for the surrounding area. The trial court placed undue emphasis on § 19-3.2 (e) and the factors listed therein in concluding that the board improperly found the proposed use too intense for the area. Although "[i]t is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate"; (internal quotation marks omitted) *Northeast Parking, Inc.* v. *Planning & Zoning Commission,* supra, 47 Conn. App. 294; the mere fact that the proposed exception would result in compliance with § 19-3.2 (e) does not override the noise, safety and area considerations of § 19-3.2 (a). As discussed in part I of this opinion, the express meaning of § 19-3.2 (e) does not remove the consideration of the factors in § 19-3.2 (a) from the board.

With respect to the remaining bases for the court's reversal of the decision of the board, the court apparently found evidence offered by the plaintiff more credible than that offered by the board. Such credibility determinations are left to the board. The board was entitled to credit the testimony and evidence adduced during the four days of public hearings in arriving at its ultimate conclusion that the proposed use was too intense for the surrounding area. It cannot be said that the conclusion of the board did not comport with law and logic in light of the nature of the area, noise concerns, traffic concerns and health concerns. We conclude that the board properly exercised its discretion in denying the application for the special exception and that there was substantial evidence to support its finding that the use was too intense for the surrounding

area under the zoning regulations. The court, therefore, improperly reversed the decision of the board.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment affirming the decision of the zoning board of appeals.

In this opinion the other judges concurred.