IN RE JUSTIN F. ET AL.*
(AC 29498)
(AC 29912)
(AC 30610)
(AC 30611)

Bishop, DiPentima and Foti, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

84

Argued May 26—officially released June 11, 2009[1]

---

[1] June 11, 2009, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Anthony L.*, pro se, and *Kimberly L.*, pro se, the appellants in AC 29498, AC 30610 and AC 30611, appellees in AC 29912 (respondents).

*Susan T. Pearlman,* assistant attorney general, with whom were *Stephen G. Vitelli* and *Colleen B. Valentine,* assistant attorneys general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellant in AC 29912, appellee in AC 29498, AC 30610 and AC 30611 (petitioner).

*Hilliary H. Horrocks,* for the minor children.

*Opinion*

BISHOP, J. These appeals reveal a woeful story of systemic and personal dysfunction. At the center of the ever swirling and multidimensional controversy between the state and the parents is a determination of the placement and well-being of two children: Justin F., who was born on October 24, 1997, and Hailee L., born on October 27, 2003.

Before reaching the issues on appeal, it is useful to provide a procedural overview of the record. For our purposes, we begin with the filing of neglect petitions by the petitioner, the commissioner of children and families (commissioner), against the respondent parents, Kimberly L. and Anthony L. (parents)[2] in August, 2004. While those petitions were pending, the commissioner sought and obtained an order of temporary custody of the children on September 30, 2004. Since then, the children have been in the commissioner's continuous care.

_____

[2] Kimberly L. and Anthony L. are married. Kimberly L. is the biological mother of Justin F. and Hailee L., and Anthony L. is the biological father of Hailee L.. Because the parental rights of Justin F.'s biological father, Jason W., have been terminated, and the children had been living with Kimberly L. and Anthony L. before their removal, for clarity we refer to Kimberly L. and Anthony L. as the parents.

During November, 2005, the court, *Bear J.*, heard the neglect petitions after which the court, by decision dated December 1, 2005, adjudicated the children neglected and committed them to the custody of the commissioner. The court determined, as well, that it could not find it in either child's best interest to be reunited with the parents, either with or without protective supervision. In its decision, the court noted the testimony of a psychiatrist that " 'both the mother and father appeared to have abnormal thought content which crossed from reality into delusion,' " that both parents made conspiratorial allegations, and that the father's allegations went so far " 'as to allege an elaborate and secret child sex abuse ring involving attorneys, [department of children and families (department)] workers, police and other state officials.' " The court noted that the psychiatrist had determined that both parents suffered from a delusional disorder and that their " 'delusional thought patterns have interfered with their judgment and behavior in dealing with outside agencies for their children.' " Although the pro se parents participated in the hearing by cross-examining department witnesses, they did not testify, nor did they timely appeal from the court's judgment. Shortly thereafter, however, the parents filed a fusillade of motions seeking, inter alia, a stay of the proceedings, disqualification for bias and prejudice, an objection to the court's neglect and commitment determinations in which they referred to the proceedings as a "kangaroo mistrial," and an objection to the court's direction that permanency plan filings and hearings be assigned to the appropriate judicial district court.[3]

---

[3] The record reflects that when the neglect petitions were filed, the parents were living in Waterbury, and the petitions were filed in the Waterbury judicial district. Subsequently, the matter was transferred and heard at the Child Protection Session in Middletown, following which it was returned to the local court for permanency planning and associated filings.

The next event of procedural significance took place on April 28, 2006, when the commissioner filed petitions in the Waterbury judicial district for termination of parental rights as to both children. While these petitions were pending, on May 11, 2006, the court made a determination that the department need not make any further attempts to reunify the children with the parents. Additionally, the court issued an interim order on August 24, 2006, that the parents not have any contact with the children unless through evaluation or sanctioned visits. It would be an understatement to reflect that by this juncture the relationship between the parents and the department had become toxic. The file reflects, as well, numerous intersections between the parents and the court in which the parents complained, generally, of the unfairness of the process.

The termination petitions were heard intermittently on several days commencing on February 5, 2007, and concluding on March 30, 2007, at the Child Protection Session in Danbury, following which, the court, *Winslow, J.*, issued an order denying the petitions as to the parents on the ground that the commissioner had not proven their failure to achieve a sufficient degree of personal rehabilitation.[4] In conjunction with this proceeding, the court ordered the department to file a revised permanency plan by May 24, 2007.[5] Following

[4] The record reflects that through this proceeding, the court did terminate the parental rights of Jason W. as to Justin F. on the ground of abandonment and the absence of any ongoing parent-child relationship. There was no appeal from this order.

[5] A fair assessment of the memorandum of decision issued by the court more than suggests that Judge Winslow took a significantly contrary view of the underlying facts than Judge Bear had during the earlier neglect proceedings. Judge Bear's December 1, 2005 memorandum of decision on the neglect petition reflects that he generally credited the commissioner's witnesses who testified that the parents exhibited significant mental health issues, and he saw their resistance to department involvement with the family as not in the children's best interest.

To the contrary, Judge Winslow's memorandum of decision dated April 18, 2007, in the termination matter, reviewing much of the same historic

the court's denial of the termination petitions, the commissioner, on May 24, 2007, filed motions to review the permanency plans regarding the children. Additionally, the parents, on June 26, 2007, moved to revoke the children's commitment to the commissioner and to have custody restored to them. Each side objected to the other's filings.

By order dated September 5, 2007, the court, *Winslow J.*, sitting at the child protection docket in Danbury, approved revised permanency plans that called, inter alia, for reunification of the children with their parents. The court also issued amended specific steps for the parents that included, inter alia, the requirement that they cooperate with the department. In response, the parents filed a motion for reconsideration on September 24, 2007, in which they alleged that the orders issued by the court were void, unlawful and a violation of their constitutional rights. This motion was denied.

Shortly thereafter, the commissioner filed a motion to modify the parents' visitation with the children to seek supervision of weekly two hour visits at the department's office by a third party, Alliance Staffing. The parents filed a lengthy objection in which they made several significant derogatory allegations against the department relating to their lack of unmonitored access to the children. On May 12, 2008, the court, *Winslow, J.*, issued a number of orders related to then pending motions. These included a motion to compel visitation filed by the parents and relating to specific instances in

information, reflects a belief that the parents, generally, were appropriately caring and nurturing and that the children, generally, were doing well. Judge Winslow also had a significantly different reaction to the involvement and role of the department. For example, she commented in her memorandum of decision: "Some of the witnesses and exhibits produced by the mother and the father thoroughly debunked factual claims of [the department] or contradicted statements attributed to those witnesses by [department] workers."

September, 2007; the commissioner's motion to modify visitation dated October 1, 2007, and the parents' opposition thereto; and the parents' motion to increase visitation dated August 16, 2007. During this hearing, the court expressed "profound disappointment" that the department did "not understand that its obligation in this case is a plan for reunification and that that plan for reunification is intended to reunify, not to find evidence as to why [the parents] should not be allowed to reunify." The court additionally criticized the department for allegedly picking fights with Anthony L. in the presence of his children. The court continued: "I see no conceivable reason at this time why supervised visitation is required."[6] Notwithstanding these comments, the court's criticism was bilateral. As to the parents, the court noted that they had repeatedly refused to accept legal assistance, had caused substantial delay in making progress toward reunification and had refused to follow the specific steps established by the court. At the conclusion of this hearing, the court ordered unsupervised visitation between the children and the parents based on a gradually increasing schedule of access. The commissioner appealed and shortly thereafter sought a stay of the court's visitation order.[7]

Additionally, on June 13, 2008, the parents filed a motion for contempt against the department, among others, based on their claim that the department had violated an order issued on September 30, 2004, for weekly visitation, as well as the court's latest order for unsupervised visitation and that the department had failed to file a permanency plan for their reunification

[6] To the extent the evidence at the neglect hearing was based on some of the same events as were presented in the later termination proceeding, this record reflects diametrically different assessments of this evidence by two different trial judges.

[7] The file reflects that this court issued an order staying the visitation order based on an emergency request by the commissioner. This court's order was in effect from June 6 until July 23, 2008.

with the children as more recently ordered by the court. The parents' contempt motion was heard by the court, *Kahn, J.*, in Waterbury on July 9, 2008.[8] To the extent the motion for contempt related to the court's recent order for unsupervised visitation, it was denied on the basis of the stay then in effect. As to the weekly visitation, the court noted that the parents were responsible for two of the missed visits and that the department had already put in place a plan to make up for a third missed visit. The court issued orders for ongoing visitation and for the department to make arrangements for makeup visits any time visits are missed for extrinsic reasons. On the basis of its conclusion that the department had tried to accommodate the parents' schedules, the court declined to hold the department in contempt. As to that part of the contempt motion regarding the department's alleged failure to put a plan of reunification in place, the court found that "it is the parents who, by their very actions, have stalled reunification." Based on a motion to reargue filed by the parents, the court, *Kahn J.*, conducted a further hearing on July 23, 2008. At the conclusion of the hearing, the court once again denied the parents' contempt motion.

Two days later, on July 25, 2008, the commissioner filed a motion captioned "Ex Parte Motion for Emergency Relief to Modify Visitation" in the Superior Court for Juvenile Matters in New Haven.[9] In this motion, the commissioner claimed, inter alia, that the court's May 12, 2008 order for unsupervised visitation then in effect was not based on any evidence regarding the present welfare and best interests of the children. The motion

---

[8] The record reflects that the matter was transferred back to the Waterbury judicial district from the regional child protection docket in Danbury following the court's May 12, 2008 decision.

[9] The record reflects that after the contempt hearing, the case was transferred from the child protection docket in Waterbury to the Superior Court for juvenile matters in the judicial district of New Haven.

contained a number of allegations regarding the parents' purported failure to cooperate with the department, and it claimed that the condition of the children had deteriorated to the point that visitation with Hailee L. should be ceased and that visits with Justin F. should be limited to two hours per week under supervision. Although the court denied the commissioner's motion, it issued an order, dated July 25, 2008, that "the children are not to be forcibly removed from their foster parents against their will to attend their visits." The court also directed that the department's ex parte motion be scheduled for a hearing.

The matter was then referred to the child protection docket in Middletown and assigned to be heard on various dates in August and September, 2008. In conjunction with this matter, the court granted a continuance request by the parents, granted the parents' application for the issuance of certain subpoenas but denied the mother's request for a fee waiver in regard to service of the subpoenas on the ground that insufficient financial information had been provided to the court. In conjunction with granting the parents' request for a continuance, the court, on August 4, 2008, issued an order temporarily suspending visitation without prejudice to either party pending the court's decision on the commissioner's emergency motion.

On August 7, 2008, the parents filed a pleading captioned "Motion for Order and Contempt" at the child protection docket in Middletown through which they sought to have the children's guardian ad litem, an assistant attorney general and the commissioner held in contempt for their collective disobedience of the court's September 8, 2004 visitation order. On the same date, the parents filed a motion for contempt against the same individuals for their collective failure to abide by "the court orders from [October 19, 2006] issued by Judge Trombley and on [January 6, 2005] issued by

Judge Ginocchio." Also, on August 7, 2008, the parents filed a pleading captioned "Motion to Revoke Unlawful and Void Commitment and Transfer of [Physical] Custody." This forty-eight page motion sets forth the parents' view of the proceedings (then) to date and sets forth the parents' claims regarding deprivation of their constitutional rights as parents resulting from the commitment of their children to the department. Approximately one week later, the parents filed two additional motions, one captioned "Motion to Reinstate our Parental Unsupervised Visitation" and the second, "Motion for 'Emergency' Stay of Erroneous, Unlawful and Void Orders (August 4, 5, 2008) issued by Judge Stuart D. Bear."

The next court action of significance in the record is an order dated August 25, 2008. In it, the court, *Bear, J.*, noted that a hearing had commenced on August 22, 2008, and was likely to require several additional days to complete. The court stated that on August 22, 2008, it had entered a second temporary order modifying its August 4, 2008 order suspending visitation and allowing the commissioner "to whom the court had previously committed the care, custody and guardianship of the children after its adjudication that each child was neglected, to perform [her] statutory duties under General Statutes § 17a-10a pending this court's decision on such emergency motion and the objections thereto." By its August 25, 2008 order, the court confirmed that the order was entered without prejudice. In this manner, the court reposed with the department the discretion to determine the extent of the parents' visitation with the children.

Following the filing of additional voluminous motions by the parents and several days of testimony, the court,

on December 9, 2008, issued its decision that by operation of § 17a-10a,[10] the department "has the responsibility and duty to determine the visitation between Justin F. and his parents that is in his best interest." Additionally, because the department had sought to suspend the parents' visitation with Hailee L., the court continued the hearing to act, pursuant to applicable provisions of § 17a-10a, to determine whether the requested suspension should be granted. In making this order, the court noted that it had been informed that "the mother to date has not cooperated with [the department] to set any such visitation." Subsequently, on December 12, 2008, when the court was informed by the department that it was no longer seeking an order suspending all visitation with Hailee L., the court permitted the department to withdraw its motion to that effect. As a

---

[10] General Statutes § 17a-10a provides: "(a) The Commissioner of Children and Families shall ensure that a child placed in the care and custody of the commissioner pursuant to an order of temporary custody or an order of commitment is provided visitation with such child's parents and siblings, unless otherwise ordered by the court.

"(b) The commissioner shall ensure that such child's visits with his or her parents shall occur as frequently as reasonably possible, based upon consideration of the best interests of the child, including the age and developmental level of the child, and shall be sufficient in number and duration to ensure continuation of the relationship.

"(c) If such child has an existing relationship with a sibling and is separated from such sibling as a result of intervention by the commissioner including, but not limited to, placement in a foster home or in the home of a relative, the commissioner shall, based upon consideration of the best interests of the child, ensure that such child has access to and visitation rights with such sibling throughout the duration of such placement. In determining the number, frequency and duration of such visits, the commissioner shall consider the best interests of each sibling, given each child's age and developmental level and the continuation of the sibling relationship.

"(d) The commissioner shall include in each child's plan of treatment information relating to the factors considered in making visitation determinations pursuant to this section. If the commissioner determines that such visits are not in the best interests of the child or that the number, frequency or duration of the visits requested by the child's attorney or guardian ad litem is not in the best interests of the child, the commissioner shall include the reasons for such determination in the child's plan of treatment."

consequence, the court, on December 12, 2008, confirmed its order that the department had authority, pursuant to § 17a-10a, to determine the terms of visitation between the parents and the children.

With this review of the record as our procedural underpinning, we now turn to the issues on appeal.[11]

I

THE PARENTS' APPEALS

A

AC 29498

The first appeal filed by the parents that we consider relates to the court's decision of January 18, 2008, denying their motion to revoke the commitment of the children to the commissioner. As noted by the commissioner in her brief, we review this claim to determine whether, in denying a motion to revoke, the court's decision was clearly erroneous. *In re Krystal J.*, 88 Conn. App. 311, 314–15, 869 A.2d 706 (2005). In a proceeding to revoke commitment, the moving party has the statutory burden to prove that "cause for commitment no longer exists . . . ." General Statutes § 46b-129 (m). Notwithstanding this requirement, the record of this matter reveals that the parents offered argument, but no evidence, to support their request. It is idiomatic that argument is not evidence. As judges routinely admonish juries: "Argument is argument, it is not evidence." *State* v. *Martinez*, 95 Conn. App. 162, 176 n.7, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). So, too, arguments of a pro se litigant are not proof. Given the parents' failure to offer any evidence in support of their motion, the court's decision denying

---

[11] During the course of these proceedings through December 23, 2008, the parents filed nine appeals, which, for organizational clarity, we have consolidated into three appeals and assigned as docket numbers AC 29498 (with six amendments), AC 30610 and AC 30611.

their motion to revoke commitment was not clearly erroneous.

B

AC 29498-A01[12]

The parents next appealed from the orders of the court dated September 5, 2007. Specifically, they challenge the court's refusal to return the children to them and its denial of their right to be heard on unidentified motions and objections. They also claim that the ordering of specific steps for reunification violated their constitutional rights.

The record reveals that on September 5, 2007, in furtherance of the permanency plan of reunification, the court ordered the following specific steps as to the parents: (1) to cooperate with one announced home visit by the department at which they are not required to be present; (2) to keep the children's whereabouts and their own known to the department; (3) to cooperate in counseling for the children, including any new therapists to which the department might refer them; (4) to accept and to cooperate with any in-home support services referred by the department, including any specialist whose purpose is to facilitate reunification; (5) to cooperate with Boys and Girls Village as to the implementation of reunification services; (6) to sign any release allowing Boys and Girls Village to communicate with the department; (7) to maintain adequate housing and legal income, to not engage in substance abuse, and to have no involvement with the criminal justice system; (8) to advise the department immediately of changes in the composition of the household; and (9) to visit the children as often as permitted by the department.

[12] This appeal was initially docketed as AC 29499 and later treated as the first amendment to AC 29498 and, accordingly, redesignated as AC 29498-A01.

"It is well established that when the department takes custody of a minor child, the trial court has the authority to issue specific steps to the department to facilitate reunification with the parents." *In re Leah S.*, 284 Conn. 685, 696, 935 A.2d 1021 (2007); see also General Statutes § 46b-129 (b), (d) and (j).[13]

Here, the court had extensive dialogue with the parents regarding the specific steps, and each of the steps was in the best interests of the children and aimed at the ultimate goal of reunification of the family. At no time did the parents ask for an evidentiary hearing. The court made it amply clear that the parents' chances of success on their motion to revoke commitment rested on their compliance with the specific steps. Under the circumstances of this case, we conclude that the specific steps ordered by the court were appropriate.[14]

---

[13] General Statutes § 46b-129 (b) provides in relevant part: "Upon issuance of an ex parte order [vesting temporary custody of a child in an agency or suitable person], the court shall provide to the commissioner and the parent or guardian specific steps necessary for each to take to address the ex parte order for the parent or guardian to retain or regain custody of the child or youth. Upon the issuance of such order, or not later than sixty days after the issuance of such order, the court shall make a determination whether the Department of Children and Families made reasonable efforts to keep the child or youth with his or her parents or guardian prior to the issuance of such order and, if such efforts were not made, whether such reasonable efforts were not possible, taking into consideration the child's or youth's best interests, including the child's or youth's health and safety."

General Statutes § 46b-129 (d) provides in relevant part: "The court, after a hearing pursuant to this subsection, shall order specific steps the commissioner and the parent or guardian shall take for the parent or guardian to regain or to retain custody of the child or youth . . . ."

General Statutes § 46b-129 (j) provides in relevant part: "The court shall order specific steps that the parent must take to facilitate the return of the child or youth to the custody of such parent. . . ."

[14] As to the parents' other motions, the court indicated that it did not have the time on its docket to hear them at that time but that they would be scheduled for a hearing in November or December. At no time did the court express any unwillingness to hear those motions. The court's case management orders did not result in any final judgment and, therefore, are not subject to review.

## C

### AC 29498-A02[15]

The parents also appealed from the judgment of the court dated September 24, 2007. In this portion of the appeal, the parents claim that the court "denied several of our motions, denied us of our right to be heard and denied our request for the return of the children." This appeal apparently attacks the court's denial of their motion to dismiss the proceedings filed on August 20, 2007, and thereafter denied on September 24, 2007.

It is axiomatic that with rare exception, this court has jurisdiction to hear appeals only from final judgments. See General Statutes § 52-263. Accordingly, "[t]he lack of final judgment is a threshold question that implicates the subject matter jurisdiction of this court. . . . If there is no final judgment, we cannot reach the merits of the appeal." (Internal quotation marks omitted.) *Children's School, Inc.* v. *Zoning Board of Appeals*, 66 Conn. App. 615, 618, 785 A.2d 607, cert. denied, 259 Conn. 903, 789 A.2d 990 (2001). "It is undisputed that the denial of a motion to dismiss is not . . . a final judgment." *Sasso* v. *Aleshin*, 197 Conn. 87, 90, 495 A.2d 1066 (1985). Accordingly, because the parents have appealed from an order that is not a final judgment, this portion of their appeal must be dismissed for lack of jurisdiction.

## D

### AC 29498-A03[16]

We next review the parents' appeal from the judgment of the court dated July 23, 2008, denying their motion for

---

[15] This appeal was initially docketed as AC 29500 and was later redesignated as AC 29498-A02 to reflect its status as the second amendment to AC 29498.

[16] This appeal, initially filed and docketed in the Supreme Court as SC 18206, was transferred to this court and docketed as AC 29498-A03.

contempt regarding visitation. Additionally, the parents claim that the court incorrectly denied their requests for subpoenas in conjunction with the contempt hearing and that the court improperly denied them an evidentiary hearing in support of their contempt motion.

The record reflects that the court, *Kahn, J.*, first heard the parents' motion for contempt on July 9, 2008. At the hearing, the court focused on the parents' concerns that they had been denied three of their weekly Tuesday visits with their children. Noting that two of the visits had been cancelled because of the unavailability of the parents, the court then addressed the third visit about which there was a factual dispute. In this regard, the department had claimed in its written response to the parents' motion that the parents had failed to call to signal their intent to visit. The mother stated that she had, in fact, called. Rather than attempting to resolve the factual contradictions, the court ascertained that the department had made plans for a makeup visit and would continue to do so in the event Justin F. would be caused to miss any summer visits due to his camp schedule. Hearing this, the court then offered the parents the opportunity to present argument in support of their motion following which the court issued the following orders: "I am going to order that the visits are to continue once a week every Tuesday. The parents need to be there at the time they're told. If the children are in a school program and they cannot attend, whether it's a summer program, the parents should be given notice in advance and that visit should be made up. I'll order the June 10 visit to be made up. The visits that the parents cancelled, they may have had a good reason to cancel, and the court's not suggesting that they didn't if they had another court proceeding to attend. But that is not [the department's] fault, and those will not be made up. I do not find [that] there is a factual or legal basis to grant contempt on

the June 10 visit. Perhaps there was miscommunication, so I will not find contempt on that. But I will order that [the department] is to provide weekly visits."[17]

On July 23, 2008, the court conducted a further hearing on the parents' motion for contempt based on their motion to reargue filed on July 18, 2008. In this motion, the parents claimed that the court had unlawfully denied an application for a fee waiver for the issuance of subpoenas for witnesses at the contempt hearing and deprived them a right for a full evidentiary hearing.

At the hearing on the parents' motion to reargue, the court addressed the parents' claim that they had been denied the right to present evidence as follows: "The parents requested today an evidentiary hearing on the basis that [the department] cannot be trusted based on their citation to Judge Winslow's decision. And that the representations of [the department] cannot be trusted. This court will find that at this time, based on what has been presented to the court, [that] there is no need for an evidentiary hearing because the court will accept the factual allegations that the parents have made regarding the three missed visits."

The court then set forth its factual findings in detail after which it repeated its conclusions first made at the July 9, 2008 hearing that the parents had failed to demonstrate that the department had wilfully violated an order of the court. The court closed this hearing by urging the parents to seek the advice of counsel.

The parents' procedural claims that the court denied them a fee waiver to issue subpoenas and the opportunity for a full evidentiary hearing require little discussion. The record reflects that the court denied the

[17] The court noted that to the extent the parents' motion for contempt addressed their entitlement to unsupervised visitation, the motion would be denied on the basis of the stay of that order issued by this court and then still in effect. The record reflects that the court was correct in its assessment of the status of the record. The parents do not challenge that

parents' requests for subpoenas without prejudice subject to a determination of whether evidence would be needed for the contempt hearing. The court later determined that no evidence would be necessary. Rather, the court invited the parents to make factual representations to the court, which the court then accepted as proven facts. Under those circumstances, the parents are not able to show any detriment caused to them by the procedure adopted by the court. Other than their bare assertion that they were entitled to have subpoenas issued in conjunction with the contempt hearing, the parents have provided no basis from which this court could determine on appeal that the trial court incorrectly failed to accede to their subpoena requests.

Finally, as to this portion of the appeal, the parents' claim that the court's ruling that the department was not in contempt finds no support in the record. Within the past few years, our Supreme Court has clarified the basis on which a reviewing court should assess a trial court's judgment of contempt. As the court indicated in *In re Leah S.*, supra, 284 Conn. 685, "our analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) Id., 693–94.

conclusion on appeal, nor does it appear that they argued to the contrary before the trial court.

Although *In re Leah S.* involved a review of a trial court's finding of contempt, its reasoning and teaching apply to the circumstances at hand. Unlike *In re Leah S.*, we need to address only the second prong to determine whether the court acted correctly because there was no contempt found in this case.

As revealed by the record, the motion for contempt focused on three visits, two of which had been cancelled by the parents and the third one missed due to miscommunications between the parties.[18] Under those circumstances, the court determined that any lapses by the department were not wilful or voluntary. In reaching this conclusion, we cannot say that the court abused its discretion.

E

AC 29498-A04[19]

We next address the appeal filed by the parents regarding the orders of the court, *Brown J.*, dated July 25 and 29, 2008. In this appeal, the parents claim that the court incorrectly ordered that the children not be forced to attend visits with their parents and that the court violated the parents' rights by transferring the case to the Middletown child protection docket. We deal with each claim in turn.

By way of additional procedural background, the commissioner filed an ex parte motion in the Superior Court for Juvenile Matters in the judicial district of New Haven for emergency relief to modify visitation on July

---

[18] On appeal and at the hearing on their motion to reargue, the parents appear to make the additional argument that the department was in contempt for generally blocking efforts at reunification previously ordered by the court. In assessing the parents' contempt claim, we confine our consideration to the allegations set forth in the parents' contempt motion.

[19] This appeal was originally filed in the Supreme Court and docketed as SC 18210. It was then transferred to this court where it was originally docketed as AC 30263. It was redesignated as docket number AC 29498-A04.

25, 2008.[20] In this motion, the commissioner made allegations that the parents had "wholly disregarded" the specific steps issued by the court in conjunction with its order for unsupervised visitation, had refused to meet with the children's therapist and had indicated an unwillingness for the children to be in counseling. The commissioner further claimed that ongoing supervised visits had become increasingly confrontational with the department and problematic for the children, with significant emotional and behavioral consequences to them. Through this motion, the commissioner sought an order ceasing all visits with Hailee L. and maintaining two hour weekly visits with Justin F. conditioned on the parents' participation in Justin F.'s therapy. In response, the court denied the ex parte relief requested by the commissioner, indicating, instead, that the motion would be scheduled for a hearing. Additionally, the court issued an order that "the children are not to be forcibly removed from their foster parents against their will to attend their visits." The matter was then referred to the Middletown child protection docket for hearing. The parents appealed from these orders.

We address the last order first. In claiming that the court should not have transferred the matter to the Middletown child protection docket, the parents do not allege that they were deprived of any right to have the matter heard in a particular venue but, rather, that it

[20] It appears from the record that once the court had ruled on the parents' motion for contempt, the court transferred the file to the New Haven judicial district without objection. It is not apparent from the record why the commissioner believed it was necessary to seek ex parte relief concerning visitation because the children were already in her custody and the whereabouts of the parents was well known to department personnel. A significant portion of this ex parte request consists of allegations that the court, *Winslow, J.*, did not have a factual basis for having ordered unsupervised visitation, an order from which the commissioner had already appealed. This fact gives some credence to the parents' claim that the commissioner's request was simply a backdoor effort to relitigate Judge Winslow's decision.

should not have been transferred to Middletown due to its history of corruption in their case and their prior experience with a judge assigned to that docket who, they claimed, had deprived them of fair procedures and hearings. Practice Book § 12-1 permits a court to transfer any matter from one judicial district court location to another judicial district court location on its own motion or on the granting of a motion of any of the parties.[21] Our Supreme Court has held that generally, an order transferring a case from one court to another is not appealable because the order does not conclude the rights of the parties. *Felletter* v. *Thompson*, 133 Conn. 277, 281, 50 A.2d 81 (1946). Accordingly, this claim is not subject to review.

With respect to the order suspending visitation with Hailee L. and restricting visits with Justin F., we are unconvinced that the court's ex parte order was an abuse of discretion. Practice Book § 34a-23 (a) contemplates the situation by providing that a court may issue ex parte relief "as deemed necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth before this court for the protection of the child. . . ." Pursuant to this provision, the court referred the matter to the child protection docket in Middletown and assigned the motion to be heard on August 13 and 22, and September 2, 2008. Thus, the court's relief was patently intended to be short-lived.[22] Our review of the record leads us to the

---

[21] We are aware of no juridical basis entitling a litigant to complain of steps the judicial branch may implement to provide for the efficient and expeditious disposition of cases. This can be no truer than in the context of matters concerning the placement and welfare of children at risk. To the extent the existence of child protection dockets provide for the expert and efficient handling of these time sensitive matters, they serve the private interests of children and their families, as well as the public interest in the protection and well-being of children.

[22] The record reveals, nevertheless, that by motion dated August 4, 2008, the parents sought and received a continuance of this hearing. In granting the parents' motion for a continuance, the court also ordered that all visitation between the parents and children be suspended without prejudice to the

firm conviction that under these circumstances, the court's order was an appropriate exercise of discretion.

F

AC 29498-A05[23]

The parents' next appeal from the court's order of August 22, 2008, suspending their visitation with the children and granting to the department the authority to determine the contours of visitation in accordance with the provisions of § 17a-10a. In this regard, the record reveals that on August 22, 2008, the court, *Bear, J.*, commenced a hearing on the commissioner's motion to suspend visitation. At the end of the day, sensing that the hearing would encompass several additional days of testimony and argument, the court entered an order modifying its August 4, 2008 order suspending visitation to allow the commissioner "to perform [her] statutory duties under § 17a-10a pending this court's decision on such emergency motion and the objections thereto." On August 25, 2008, the court issued a further order confirming that its August 22, 2008 order was entered without prejudice to the rights and positions of each party "in the hearing, including but not limited to the position of the [parents] that Judge Winslow's visitation orders should not be modified by this court." The commissioner asserts that because the parents have appealed from a patently interim order intended to be time limited and geared to the then pending hearing and the order was later superseded by the court's posthearing order, it is not subject to our present review. We agree.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from

rights and claims of the parties to be heard on August 22 and September 2, 2008.

[23] Originally filed in the Supreme Court and docketed as SC 18230, this appeal was transferred to this court and first docketed as AC 30264. Once consolidated with other pending appeals, it was redesignated AC 29498-A05.

granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754, 826 A.2d 156 (2003). "It is axiomatic that if the issues on appeal become moot, the reviewing court loses subject matter jurisdiction to hear the appeal. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *Bornemann* v. *Connecticut Siting Council*, 287 Conn. 177, 181, 947 A.2d 302 (2008).

Because the interim order at issue here was superseded by a subsequent interim order, there is no practical relief we could afford to the parents should we agree with their arguments. Accordingly, this portion of the appeal must be dismissed.

G

AC 29498-A06

The next appeal we consider is the parents' claim that on August 4, 2008, the court unlawfully suspended their parental visitation without a hearing and in the absence of supporting facts. As noted, the record reflects that on July 25, 2008, the commissioner filed an ex parte motion for emergency relief regarding visitation. The court denied the request for ex parte relief but ordered that the motion be scheduled for a hearing. The matter was referred to the child protection docket at Middletown and was scheduled to be heard on August 13 and 22, and September 2, 2008. The court granted the parents' request for a continuance from August 13

until August 22, 2008. In conjunction with the parents' request, the court ordered that visitation be suspended "without prejudice to the rights and claims of each party to be heard on August 22, 2008, and September 2, 2008, until further order or judgment of the court." Because this order was superseded by the court's subsequent visitation orders, there is no practical relief we can afford to the parents, and this portion of the appeal, therefore, must be dismissed as moot.

### H

### AC 30610

The parents next appealed from the court's orders of December 9 and 12, 2008, regarding the commissioner's request that visitation with Hailee L. be suspended and that visitation with Justin F. be supervised.[24] The record reflects that, after hearing, the court determined that the commissioner had the authority, pursuant to § 17a-10a, to determine the visitation between the parents and Justin F. As to Hailee L., the court initially continued the hearing on December 9 to December 12, 2008, to permit the commissioner, pursuant to the provisions of § 17a-10a, to offer evidence regarding the possible suspension of visitation between Hailee L. and the parents, but on December 12, 2008, the court permitted the commissioner to withdraw her motion regarding Hailee L. with the understanding that the department was willing to facilitate supervision between the children and both parents.

On appeal, the parents claim that the court should not have ceded to the department the responsibility to

[24] To the extent that the parents also claim that the court improperly denied their requests for subpoenas for this hearing, the record reflects that the court denied the parents' requests for a waiver of fees because the father had failed to provide the requisite financial information. The parents have failed to provide us with any basis to conclude that the court abused its discretion in this regard.

determine visitation in accordance with the best interests of the children as provided by § 17a-10a, and that the statute is unconstitutional. The parents also claim that the court should not have permitted the commissioner to withdraw her motion regarding the suspension of visitation with Hailee L.

Section 17a-10a, enacted in 2003, provides, inter alia, that the commissioner shall ensure that a child placed in the care and custody of the commissioner pursuant to an order of temporary custody or an order of commitment is provided visitation with his or her parents and siblings unless otherwise ordered by the court and that the commissioner shall ensure that such child's visits with his or her parents shall occur as frequently as reasonably possible based on consideration of the best interest of the child, including the age and development level of the child, and shall be sufficient in number and duration to ensure continuation of the relationship. This statute also requires the department to prepare a plan of treatment regarding visitation between a committed child and his or her parents and siblings.

Elsewhere in this statutory scheme, there are provisions entitling parents of a committed child who disagree with any provisions of the department's plan to an administrative hearing within thirty days of such a hearing request. General Statutes § 17a-15 (d). Additionally, any parent aggrieved by a decision of a hearing officer is entitled to appeal in accordance with applicable provisions of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. There is no evidence in the record that the parents availed themselves of this administrative procedure.

The parents have provided no legal underpinning to their bare assertion that § 17a-10a is unconstitutional. As our Supreme Court has commented: "It is well established that a validly enacted statute carries with it a

strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 500, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). In this instance, although we recognize that the parents appear as their own counsel, we decline to undertake an analysis of the constitutionality of a statute whimsically against the strong presumption of its validity.[25] Given the information provided to the court regarding the children's circumstances and in light of the long and tortured history of this matter, we do not fault the court for having decided to invoke the provisions of § 17a-10a in an effort to bring all the resources of the department into play to set a course in the best interests of the children.

## I

### AC 30611

The parents also filed an appeal from the December 16, 2008 decision of the court, *Bear*, *J.*, permitting the department to withdraw its motion to suspend visitation between the parents and Hailee L. Because this order was not a final judgment, it is not subject to appeal. See General Statutes § 52-263. Accordingly, this portion of the appeal must be dismissed.

## II

### THE COMMISSIONER'S APPEAL

### AC 29912

The commissioner appeals from the May 12, 2008 order of the court granting unsupervised visitation to

---

[25] The record is replete with admonishments from the court to the parents that it would be in their interests to have legal representation. Nevertheless, despite their apparent entitlement to appointed counsel, they persist in self-representation.

the parents. The commissioner makes the twofold claim that the court's order denied her due process and that the order was an abuse of discretion. As to the former, the commissioner claims that because the parents had not sought unsupervised visitation, the court's order, issued sua sponte, gave her no notice and an inadequate opportunity to be heard and that even if the question of unsupervised visitation could be said to have been fairly before the court, the court abused its discretion in making its order in the absence of testimony that execution of the order would be in the children's best interests.

At oral argument and in her appellate brief, the commissioner acknowledged that subsequent visitation orders by the court may have rendered moot the court's May 12, 2008 unsupervised visitation order. As noted previously, an actual controversy must exist for this court to afford a party practical relief. If that requirement is not met, this court does not have jurisdiction to consider the appeal, and it must be dismissed as moot.

As noted herein and acknowledged by the commissioner, subsequent to its May 12, 2008 unsupervised visitation order, the court issued visitation orders suspending visitation and then yielding responsibility to determine the contours of visitation with the children to the department pursuant to § 17a-10a. Because, as noted previously, we do not disturb those subsequent orders on appeal, there is no practical relief we can afford to the commissioner. Accordingly, the commissioner's appeal must be dismissed.

The judgments in AC 29498, AC 29498-A01, AC 29498-A03, AC 29498-A04 and AC 30610 are affirmed. The appeals in AC 29498-A02, AC 29498-A05, AC 29498-A06, AC30611 and AC 29912 are dismissed.

In this opinion the other judges concurred.